Lela M. Operton, Plaintiff-Appellant,

v.

Labor and Industry Review Commission,
Defendant-Respondent,†

Walgreen Co. Illinois, Defendant.

Court of Appeals

*No. 2015AP1055. Submitted on briefs February 23,
2016.—Decided April 14, 2016.*

2016 WI App 37

(Also reported in 880 N.W.2d 169.)

† Petition for Review filed.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Marilyn Townsend* and *Frederick B. Wade* of *Law Offices of Marilyn Townsend*, Madison.

On behalf of the defendant-respondent, the cause was submitted on the brief of *William Sample* of *Labor and Industry Review Commission*, Madison.

Before Lundsten, Brennan and Reilly, JJ.

¶ 1. REILLY, J. In 2013, our legislature enacted an entirely new statutory ground for the denial of unemployment benefits: "substantial fault." We are presented in this case with an issue of first impression as to the statutory construction and application of "substantial fault" as that term is defined in WIS. STAT. § 108.04(5g)(a) (2013–14).[1] We set aside the decision of the Labor and Industry Review Commission (LIRC) as it erred in its construction and application of "substantial fault" to the facts presented.

*Statement of Facts*

¶ 2. Lela Operton worked as a full-time service clerk for Walgreens from July 17, 2012 to March 24, 2014. As a service clerk, Operton averaged hundreds of cash handling transactions per day during her twenty months of full-time employment, or an estimated 80,000 transactions. Operton was well-liked by Walgreens, who described her work and demeanor as

---

[1] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

"conscientious," "always on time," "worked to the best of her ability," and willing to work on her days off. Operton participated in Walgreens' employee training and received information on Walgreens' policies and procedures,[2] which included training on processing Women, Infants, and Children (WIC) program checks. Operton acknowledged receipt of Walgreens' cash handling and WIC program check policies via the "New Hire Training Checklist." Operton was aware that employees faced "discipline" for failing to follow the training checklist.

¶ 3. Operton made eight "cash handling errors" during her twenty months with Walgreens:

**First Violation:** On October 19, 2012, Operton received a verbal warning for taking a WIC check for more items than the check authorized resulting in a $2.89 loss to Walgreens. Operton received a verbal and written warning that reiterated the proper procedures for taking WIC checks.

---

[2] Walgreens' "New Hire Training Checklist" explains that "[m]anagement should assign a qualified trainer to review each of the topics listed in this checklist while working with the trainee. Trainer should obtain checks in all check boxes and signatures where required. After the checklist is complete the Store Manager should meet with the trainee to verify completion and understanding." Despite this requirement, none of the check boxes were checked on Operton's form, but the document was signed and dated by Operton approximately two weeks after she began her employment, suggesting she had some period of training. At the hearing before the administrative law judge, no issue was raised as to the unchecked boxes nor as to the completeness of Operton's training. Operton does not deny that she was aware of the procedures for processing WIC checks and that she received the written policies and procedures from Walgreens when she was hired.

**Second Violation:** On February 12, 2013, Operton accepted a $14.46 WIC check without getting the customer's signature which made the check invalid.

**Third Violation:** On March 6, 2013, Operton handed a $16.73 WIC check back to the customer instead of retaining it for deposit. Operton received a written warning addressing the February 12 and March 6 cash handling errors, which outlined the proper procedure for accepting WIC checks and noted that "[f]urther failure to follow proper procedure will result in further disciplinary actions to include further write ups, suspension, and up to and including termination."

**Fourth Violation:** On July 24, 2013, Operton accepted a $27.63 WIC check before the valid date for which she received a "final" written warning that again reiterated proper WIC check handling procedures.

**Fifth Violation:** On January 1, 2014, Operton mishandled an $84.95 WIC check by inadvertently placing it in the customer's bag. Operton received another "final" written warning that included her supervisor's note that "[t]his is [Operton's] 4th issue with WIC checks. She is on a final written warning from July. Since these mistakes have been over a long period of time, [Operton] will be given one more chance."

**Sixth Violation:** On January 29, 2014, Operton accepted a $6.00 WIC check for a $6.17 purchase. Operton testified that the customer paid the 17 cents in cash. Operton received a "final" written warning together with a two-day suspension.

**Seventh Violation:** On March 18, 2014, Operton allowed a customer to leave the store before a $9.26 transaction was complete (PIN pad had not generated a receipt) and received another final written warning: "Any cash handling error, no matter the type, will lead to termination."

**Eighth Violation:** On March 22, 2014, Operton accepted a credit card for a $399.27 purchase without checking the customer's identification to verify the card belonged to the customer. The card was a stolen credit card. Operton was aware of Walgreens' requirement to check the identification when a credit card is presented for a purchase over $50.

¶ 4. Despite being well-liked and a conscientious employee, Walgreens terminated Operton's employment on March 24, 2014, for her repeated "cash handling errors" and "her failure to improve on them." Walgreens' disciplinary records indicate that it considered Operton's violations to be "cash handling errors" or "mistakes." Walgreens acknowledged that the cash handling errors were not intentional nor performed with any ill will on the part of Operton. Upon her discharge, her supervisor offered to serve as a reference. Operton's explanation for her errors was that she was having personal family issues during her time at Walgreens that left her homeless for a period of time during her employment.

¶ 5. Operton filed for unemployment benefits. Walgreens objected to Operton's request for benefits claiming that Operton "was discharged for violation of a reasonable company policy regarding excessive cash discrepancies" which was as a result of her "incapacity to perform." The Department of Workforce Develop-

ment (DWD) initially denied benefits on grounds of "misconduct." Operton appealed. An administrative law judge (ALJ) held an evidentiary hearing. The ALJ accepted Walgreens' evidence that Operton's mistakes were "errors." The ALJ found that Operton was aware of Walgreens' policies but continued to make "cash handling errors" after "receiving multiple warnings." According to the ALJ, Operton's "discharge was not for misconduct" as there was "no evidence that [Operton] intentionally or willfully disregarded the employer's interests by continuing to make cash handling errors." The ALJ also found that Operton's actions were not so careless or negligent as to manifest culpability or wrongful intent. The ALJ concluded that Operton was ineligible for unemployment benefits as her discharge was for "substantial fault" rather than for "misconduct." Operton appealed to LIRC.

¶ 6. LIRC affirmed the ALJ's decision and adopted the ALJ's decision as its own.[3] LIRC also made a finding not included within the ALJ's decision: Operton's March 22, 2014 failure to check the customer's identification was a "major infraction." LIRC did not explain why the error was a "major infraction." The circuit court affirmed LIRC.

## Unemployment Insurance

¶ 7. Prompted by concerns within the employer community that the current misconduct standard in Wisconsin was too generous in providing benefits to employees who should not qualify, the legislature, in 2013, enacted amendments to WIS. STAT. § 108.04(5)

---

[3] On October 2, 2014, LIRC modified its initial decision to correct an inadvertent reference to Operton as "contentious" and substitute "conscientious."

and (5g).[4] SCOTT SUSSMAN, DEPARTMENT OF WORKFORCE DEVELOPMENT, ANALYSIS OF PROPOSED UI LAW CHANGE DISCHARGE FOR EMPLOYEE'S SUBSTANTIAL FAULT (2012), http://dwd-uireform.vforberger.fastmail.fm/ D12–01.pdf. The amendments were expected to reduce benefit payments by approximately $19.2 million per year and increase the unemployment insurance trust fund, which had a deficit, by the same amount.[5] *Id.*

¶ 8. The legislature created a new two-tier standard for disqualifying claimants from receiving unemployment insurance benefits. The first tier is "misconduct":

> For purposes of this subsection, "misconduct" means one or more actions or conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which an employer has a right to expect of his or her employees, or in carelessness or negligence of such degree or recurrence as to manifest culpability, wrongful intent, or evil design of equal severity to such disregard, or to show an intentional

---

[4] The amendments to WIS. STAT. § 108.04(5)-(5g), enacted in 2013, became effective with respect to determinations issued on or after January 5, 2014.

[5] It came to our attention that the version of the DWD's report provided in LIRC's appendix contains different information from what is in the document available on the DWD's website. The version of the report provided to the court states as follows:

> The Department expects the change in the law surrounding misconduct to reduce benefit payments by approximately $19.2 million per year on average and increase the UI Trust Fund by a similar amount. This estimate is based off a review of current cases that were found to not be misconduct that would likely be found to be substantial fault.

175

and substantial disregard of an employer's interests, or an employee's duties and obligations to his or her employer.

Wis. Stat. § 108.04(5). The legislature enumerated seven specific employee actions that satisfy the misconduct standard, including drug and alcohol use, theft of an employer's property, conviction of a crime while on or off duty that affects the employee's ability to perform his or her job, threats or acts of harassment at work, excessive absenteeism or tardiness, falsifying business records, and willful or deliberate violation of a written and uniformly applied government standard or regulation. Sec. 108.04(5)(a)-(g).

¶ 9. The second tier is "substantial fault." Wis. Stat. § 108.04(5g)(a). Substantial fault did not exist as a ground for denial of benefits prior to 2014. *See* Wis. Stat. § 108.04(5)-(5g) (2011–12). The statutory definition for "substantial fault" is as follows:

> For purposes of this paragraph, "substantial fault" includes those acts or omissions of an employee over which the employee exercised reasonable control and which violate reasonable requirements of the employee's employer . . . .

Sec. 108.04(5g)(a). Unlike misconduct, in which the legislature expressly set forth specific employee actions that constituted "misconduct," the legislature set forth three acts or omissions by employees that do *not* constitute substantial fault:

> 1. One or more minor infractions of rules unless an infraction is repeated after the employer warns the employee about the infraction.
>
> 2. One or more inadvertent errors made by the employee.

3. Any failure of the employee to perform work because of insufficient skill, ability, or equipment.

Sec. 108.04(5g)(a)1.-3.

¶ 10. Under subd. 1., it is not substantial fault if an employee makes "[o]ne or more minor *infractions* of rules" unless the employee was warned about the infraction and the infraction continued. WIS. STAT. § 108.04(5g)(a)1. (emphasis added). Under subd. 2., it is not substantial fault if the commission or omission was "[o]ne or more *inadvertent errors* made by the employee." Sec. 108.04(5g)(a)2. (emphasis added). And, under subd. 3., it is not substantial fault if the conduct was "[a]ny failure of the employee to perform work because of insufficient skill, ability, or equip-ment." Sec. 108.04(5g)(a)3.

¶ 11. The terms "inadvertent errors" and "in-fractions" come into play in this appeal. Under our rules of statutory construction, when the legislature uses different terms within the same statute, they intend the terms to have distinct meanings. *See Gittel v. Abram*, 2002 WI App 113, ¶ 26, 255 Wis. 2d 767, 649 N.W.2d 661. The terms "infractions" and "errors" are statutorily distinct terms with their own meanings. The term "error" is defined in WIS. STAT. § 108.02(10e)(am) as it relates to a DWD "error":

[A]n error made by the department in computing or paying benefits which results exclusively from:

1. A mathematical mistake, miscalculation, misap-plication or misinterpretation of the law or mistake of evidentiary fact, whether by commission or omission; or

2. Misinformation provided to a claimant by the department, on which the claimant relied.

177

Sec. 108.02(10e)(am). "Infraction" is not defined in the statutes.

*De Novo Review*

¶ 12. On appeal we review the decision of the agency, not the circuit court. *Milwaukee Cty. v. LIRC*, 2014 WI App 55, ¶ 13, 354 Wis. 2d 162, 847 N.W.2d 874. We will only set aside a LIRC decision if (1) LIRC acted without or in excess of its powers, (2) the order or award was procured by fraud, or (3) the findings of fact do not support the order or award. WIS. STAT. § 102.23(1)(e). We uphold LIRC's findings of fact on appeal if they are supported by credible and substantial evidence. *Applied Plastics, Inc. v. LIRC*, 121 Wis. 2d 271, 276, 359 N.W.2d 168 (Ct. App. 1984); § 102.23(6). There are three levels of deference applicable to administrative agency interpretations: great weight, due weight, and de novo review. *Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 660, 539 N.W.2d 98 (1995).

¶ 13. Great weight deference, the highest level of deference, is appropriate when "(1) the agency is charged by the legislature with administering the statute at issue; (2) the interpretation of the statute is one of longstanding; (3) the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) the agency's interpretation will provide uniformity in the application of the statute." *Milwaukee Cty.*, 354 Wis. 2d 162, ¶ 14 (citation omitted). Due weight deference applies "when an agency has some experience in the area but has not developed the expertise that necessarily places it in a better position

than a court to interpret and apply a statute." *Id.*, ¶ 15 (citation omitted). De novo review is applied if the "issue before the agency is one of first impression or when an agency's position on an issue provides no real guidance." *Id.*, ¶ 16 (citation omitted).

■

¶ 14. LIRC argues for great weight deference as it asserts all four conditions are met: (1) it is charged with administering Wis. Stat. § 108.04(5g) pursuant to Wis. Stat. § 108.09(6); (2) it has longstanding experience interpreting this statutory scheme as the determination of misconduct under the former statute and the determination of substantial fault under the current statute are similar; (3) when looking at whether a claimant's acts or omissions satisfy substantial fault, it is looking at many of the same factual situations and circumstances it has looked at for almost eighty years under *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 259–60, 296 N.W. 636 (1941), which demonstrates that it is employing its expertise and specialized knowledge; and (4) its decisions addressing substantial fault since the statute was amended are uniform. We disagree.

¶ 15. LIRC meets the first criteria—it is charged with administering unemployment benefits. *See* Wis. Stat. § 108.09(6). The second criteria is not met as the legislature did away with the old common law definitions, enacted a new statutory definition for misconduct, and created substantial fault as an entirely new basis for denying benefits. The third criteria is likewise missing for the same reason as the second—the legislature replaced the *Boynton Cab* common law definition of misconduct with a new statutory definition and, therefore, LIRC's almost eighty years of experience interpreting *Boynton Cab*

has diminished importance. LIRC also fails in the fourth criteria as its decisions addressing substantial fault in *Campo v. Park Towne Management Corp.*, UI Hearing No. 14000528MD (LIRC June 27, 2014), http://lirc.wisconsin.gov/ucdecsns/4020.htm., and *Kirkendoll v. Clean Power LLC*, UI Hearing No. 14603479MW (LIRC Aug. 8, 2014), http://lirc.wisconsin.gov/ucdecsns/4049.htm., are contrary to its decision in this case.

¶ 16. In *Campo*, Campo served as an accounting assistant for a real estate management company. She was discharged after seventeen months for multiple accounting errors, which her employer said were part of a long-term pattern of making mistakes by not following procedures. *Campo*, UI Hearing No. 14000528MD at 1. LIRC found that Campo's "mistakes are in the nature of mistakes in the performance of her job, which were best characterized as errors, not specific rule violations," and, therefore, met the second exception (inadvertent errors). *Id.* at 3. LIRC also found that Campo's continued accounting mistakes demonstrated that she was not capable of completing her job to the satisfaction of her employer and therefore the third exception (insufficient skill or ability) applied. *Id.* Campo was found eligible for unemployment benefits. *Id.* at 2.

¶ 17. LIRC's conclusion in *Campo* is inconsistent with its conclusion in this case. Both Campo and Operton made repeated errors by not following procedures. "Errors" fall under the second exception (inadvertent errors) to substantial fault. WIS. STAT. § 108.04(5g)(a)2. Additionally, neither Campo nor Operton could meet the expectations of their employer in

180

the performance of their job; therefore, both fall within the third exception (insufficient skill or ability). Sec. 108.04(5g)(a)3.

¶ 18. In *Kirkendoll*, Kirkendoll worked as a cleaner at a commercial cleaning company for approximately one year. *Kirkendoll*, UI Hearing No. 14603479MW at 1. During that year, Kirkendoll was issued several "performance correction notices" based on prohibited conduct such as talking on a cell phone during work hours, having a container of juice on the cart used to transport cleaning supplies, not starting work promptly after punching in, and not propping the restroom door open while cleaning. *Id.* Kirkendoll's final warning involved her failure to restock paper towels in the men's restroom after being reminded to do so by her supervisor. *Id.* at 1–2.

¶ 19. LIRC found Kirkendoll eligible for benefits as there was no evidence in the record of a rule regarding the employee's conduct; thus, it declined to reach the "infraction" exception. *Id.* at 3. LIRC concluded that the inadvertent errors exception applied to her failure to restock the restroom as it was an inadvertent misunderstanding. *Id.* LIRC's decision in *Kirkendoll* is inconsistent with LIRC's order in this case; there is no evidence in Operton's record of any "infraction," and, like *Kirkendoll*, there is no evidence that Operton's errors were anything other than inadvertent.

¶ 20. We conclude de novo review is required. "Substantial fault" is a completely new legal concept not previously in existence. LIRC is not applying an old statute in a new way; it is applying a new statute to a new concept. The application of the "substantial fault" statute is a matter of first impression before this court, and LIRC does not have a longstanding nor

consistent history in the application and construction of the substantial fault statute.

*There is no Evidence in the Record that Operton Committed a "Major Infraction"*

¶ 21. We begin with the presumption that an employee is entitled to receive unemployment benefits and the burden of proving ineligibility is upon the employer. *Consolidated Constr. Co. v. Casey*, 71 Wis. 2d 811, 820, 238 N.W.2d 758 (1976). Operton argues that no evidence was presented by Walgreens that she committed an infraction. The ALJ did not find that Operton committed an infraction. LIRC, without any support in the record, found that Operton committed a "major infraction."

¶ 22. In *Campo*, LIRC acknowledged that a difference exists between an "error" and an "infraction." *Campo*, UI Hearing No. 14000528MD at 2. An error is properly described as "one or more unintentional acts or omissions by the employee." *Id*. LIRC found that Campo's conduct was "in the nature of mistakes in the performance of her job, which were best characterized as errors, not specific rule violations." *Id*. LIRC determined that the first exception did not apply as no evidence was offered of any infractions. *Id*. Likewise, in *Kirkendoll*, LIRC refused to consider the "infraction" exception because no record was made on the existence of any rule. *Kirkendoll*, UI Hearing No. 14603479MW at 3.

¶ 23. The ALJ who presided over Operton's evidentiary hearing did not make a finding that any of Operton's errors were infractions. Parties in adminis-

trative proceedings are entitled to know why an agency set aside the findings of an ALJ and on what basis and what evidence the agency relied upon to make its contrary findings. *Transamerica Ins. Co. v. DILHR*, 54 Wis. 2d 272, 284, 195 N.W.2d 656 (1972). LIRC did not explain why it characterized Operton's March 22, 2014 error as a "major infraction." "Fundamental fairness requires that administrative agencies, as well as courts, set forth the reasons why a fact-finder's findings are being set aside or reversed, and spell out the basis for independent findings substituted." *Id.* We conclude that LIRC erred as Walgreens never offered any evidence that Operton committed an "infraction" let alone a "major" infraction.

*Repeated Inadvertent Errors, even if Warned,
do not Constitute "Substantial Fault"*

¶ 24. The second exception to "substantial fault" is that "[o]ne or more inadvertent errors" made by an employee do not constitute "substantial fault." Wis. Stat. § 108.04(5g)(a)2. Operton's disciplinary records, created contemporaneously with the eight events, referred to Operton's acts/omissions as "discrepancies," "mistakes," or "cash handling errors." The ALJ found that Operton's conduct constituted unintentional "errors." Despite finding all eight events to be errors, the ALJ found "substantial fault" as Walgreens suffered actual financial loss and had given "multiple warnings" to Operton. The ALJ and LIRC erred in merging the "warning" component set forth in the "infraction" exception in § 108.04(5g)(a)1. with the "inadvertent error" exception in § 108.04(5g)(a)2.

¶ 25. One or more "inadvertent errors," even if warnings are given, are not "substantial fault" under

the statute. *See* Wis. Stat. § 108.04(5g)(a)2. The term "inadvertent" means "failing to act carefully or considerately, inattentive; resulting from heedless action, unintentional." *Inadvertent,* Collins English Dictionary (12th ed. 2014). In *Campo,* LIRC found that Campo's employment was marked by a "history of errors" that demonstrated "a long-term pattern of making mistakes by not following procedures." *Campo,* UI Hearing No. 4000528MD at 1. Campo's employer warned Campo multiple times about her errors, yet the errors continued despite "a number of attempts by the employer to improve [Campo's] job performance." *Id.* LIRC determined that Campo's failure to properly follow her employer's procedures did not involve "specific rule violations," and were properly characterized as unintentional errors despite the multiple warnings. *Id.* at 2. As Campo's conduct, despite the warnings, were errors rather than infractions, substantial fault was not present and Campo was eligible for unemployment benefits. *Id.*

¶ 26. Similarly, in *Kirkendoll,* LIRC found that Kirkendoll's failure to restock paper towels in the men's restroom, which resulted in her termination, was an inadvertent error. *Kirkendoll,* UI Hearing No. 14603479MW at 3. According to LIRC, "it is undisputed that [Kirkendoll] did not intentionally disobey her supervisor when she failed to restock the restroom. She had forgotten to do so, clearly an inadvertent act . . . ." *Id.* LIRC concluded that Kirkendoll's conduct was an inadvertent "misunderstanding" and, therefore, not "substantial fault." *Id.*

¶ 27. The ALJ found that there was no evidence that Operton intentionally or willfully disregarded Walgreens' interests and that Operton's actions were not so careless or negligent as to manifest culpability

184

or wrongful intent. The findings of the ALJ reflect that Operton simply made the type of unintentional mistakes that all people make at times. The legislature statutorily determined that an employee does not lose their unemployment benefits for making unintentional errors. *See* Wis. Stat. § 108.04(5g)(a)2.

¶ 28. Walgreens argued that "at some point prior to Operton's discharge her errors went beyond inadvertence and became controllable violations of Walgreens' reasonable cash handling policies."[6] LIRC agreed, explaining that "a series of errors which, taken individually, are not disqualifying, in their cumulative effect at some point cross over the line separating non-disqualifying from disqualifying conduct." Walgreens' and LIRC's argument does not have statutory merit. Repeated inadvertent errors do not statutorily morph into "infractions" if warnings have been given. Inadvertent errors, warnings or no warnings, never meet the statutory definition of substantial fault.

*Operton's Conduct Reflects a Failure or Inability
to Conform to Walgreens' Expectations
Rather than "Substantial Fault"*

¶ 29. In objecting to Operton's application for unemployment benefits, Walgreens listed "incapacity to perform" as the reason for her cash handling errors. There is no dispute that Operton had the ability and skill to do her job as Operton correctly performed 80,000 cash transactions, meaning she correctly per-

---

[6] Walgreens did not submit a brief to this court; however, since the burden of proving unemployment ineligibility is on the employer, we reference Walgreens' argument found in its brief to the ALJ.

formed 99.9% of her cash handling transactions. Operton argues that her discharge was the result of her inability to reach the level of perfection that Walgreens demands.

¶ 30. In *Campo*, LIRC found that Campo's "history of accounting mistakes indicates that she never reached a level of competence in her job that satisfied her employer's expectations. The employer's notice of termination in fact cites incompetence as a reason for discharge." *Campo*, UI Hearing No. 14603479MW at 2. According to LIRC, Campo's "insufficient skill or ability is evidenced by the fact that from the beginning of her employment she had difficulty avoiding mistakes in her bookkeeping duties, and did not demonstrate an ability to improve substantially in the seventeen months of her employment." *Id.* at 3. LIRC determined that Campo's failure to perform was not "due to a lack of effort." *Id.* LIRC concluded that "[a]n employee's failure, despite her best efforts, to possess or acquire the skills necessary to consistently meet an employer's expectations, is excluded from the definition of substantial fault." *Id.* LIRC tries to distinguish *Campo* by suggesting that Campo's employment required significantly more skill than Operton's role at Walgreens, but it offers no support in the record for that factual argument nor any theory as to why a job requiring more skill is relevant to one's ability to meet an employer's expectations.

¶ 31. Walgreens has the right to have high expectations of its employees and also has the right to discharge an employee for not meeting their expectations. But Walgreens' high expectations do not eliminate "sufficient skill" or "ability" as an exception to "substantial fault." LIRC erred in its application of the "substantial fault" statute as Operton's discharge was

due to her inability to satisfy Walgreens' expectations, and, therefore, we set aside LIRC's conclusion that Operton had sufficient skill or ability to perform her job.

*Conclusion*

¶ 32. Inadvertent errors, even if repeated after a warning, do not constitute substantial fault. WIS. STAT. § 108.04(5g)(a)2. LIRC's finding that Operton's eighth error was a "major infraction" has no support in the record, and Operton's failure to meet Walgreens' expectations under the facts presented does not make Operton ineligible for unemployment benefits under § 108.04(5g)(a)3. We reverse the circuit court's order affirming LIRC's decision and remand for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded for further

¶ 33. LUNDSTEN, J. *(concurring)*. I join in the result reached by the majority, but not the opinion. Although there is much to commend in the majority opinion, my analysis is sufficiently different that I choose to write separately.

¶ 34. As the majority explains, the legislature has created a new standard intended to further limit the number of employees terminated for poor performance who are eligible for certain unemployment benefits. The new standard is "substantial fault," and I agree with the majority that it plainly does not cover Operton's termination. In my view, the level of deference granted to LIRC does not matter. Regardless the degree of deference granted, LIRC erred.

¶ 35. WISCONSIN STAT. § 108.04(5g)(a) defines "substantial fault" in sweeping terms. In addition to what-

ever one might glean from the term itself, the legislature tells us that " 'substantial fault' includes those acts or omissions of an employee over which the employee exercised reasonable control and which violate reasonable requirements." *Id.*

¶ 36. The broad sweep of this initial "substantial fault" language is exemplified in this case. All agree that even Operton's most minor mistakes fit this initial definition. For example, when Operton accepted a WIC check for some items not covered by the WIC program, resulting in a $2.89 loss to Walgreen, her act was something over which she had control and the act violated a reasonable Walgreen requirement.

¶ 37. But the portion of the new standard that really matters is not the initial sweeping definition of "substantial fault." Rather, it is the three circumstances the legislature exempts from "substantial fault." The three circumstances that are not "substantial fault" are:

> 1. One or more minor infractions of rules unless an infraction is repeated after the employer warns the employee about the infraction.

> 2. One or more inadvertent errors made by the employee.

> 3. Any failure of the employee to perform work because of insufficient skill, ability, or equipment.

Wis. Stat. § 108.04(5g)(a)1., 2., and 3. Notably, these are independent alternatives. If just one of the alternatives applies, "substantial fault" is not present. On appeal, the dispute has focused on the second alternative. Operton argues that her eight errors were "one or more inadvertent errors" and, therefore, not "substantial fault."

¶ 38. LIRC does not seriously dispute that Operton's errors, viewed individually, were all "inadvertent errors." LIRC's quibble on this point is brief and confusing. LIRC says that, although Operton's acts were *unintentional,* there may be some distance between *unintentional* and *inadvertent.* I address that topic no further.

¶ 39. Rather than seriously contest whether Operton's errors were "inadvertent errors," LIRC instead argues that a "series of even inadvertent failures in their cumulative effect at some point goes beyond inadvertence to substantial fault." This argument is flawed in at least two ways.

¶ 40. First, LIRC does not attempt to explain what it means by "at some point." What is it about Operton's eight errors over 20 months that moves them from "one or more inadvertent errors" to "substantial fault"? LIRC gives no answer.

¶ 41. Second, LIRC's underlying statutory construction argument is flawed. LIRC asks us to take the same approach to interpreting "substantial fault" that has been applied to "misconduct." LIRC tells us that, when it comes to "misconduct," the statutory bar is set high and generally refers to deliberate violations and acts evincing a high degree of negligence. I understand LIRC to be arguing that we should follow the lead of *Boynton Cab Co. v. Neubeck,* 237 Wis. 249, 296 N.W. 636 (1941), which explains that the statutory "misconduct" standard can be satisfied when an employee repeats an act that, standing alone, would not have constituted misconduct. According to LIRC, like the *Boynton Cab* court, we should issue an opinion clarifying that "at some point" a "series of even inadvertent failures" constitutes "substantial fault."

189

¶ 42. There are differences in the statutory language and the circumstances between what the supreme court faced in *Boynton Cab* and what we face here. But I conclude that one difference is fatal to LIRC's statutory construction argument. Unlike the language at issue in *Boynton Cab*, a 1941 case that addressed an earlier version of the "misconduct" subsection, the new "substantial fault" standard has language addressing repeat conduct.

¶ 43. Both of the first two circumstances that are not "substantial fault" use the phrase "one or more." Both times this repeat-errors language is there to limit the meaning of "substantial fault." That is, the statute tells us that, if all we have is repeated "minor infractions of rules" or repeated "inadvertent errors," we do not have "substantial fault." *See* Wis. Stat. § 108.04(5g)(a)1. and 2. No similar language constrained the *Boynton Cab* court. Indeed, I doubt the *Boynton Cab* court's interpretation of "misconduct" would have been so broad if the statutory language at issue included a limitation saying that "one or more negligent acts" is not misconduct.

¶ 44. Thus, I reject LIRC's "at some point" argument.

¶ 45. LIRC also suggests that it is significant that Operton received warnings. But the "inadvertent errors" alternative that Operton relies on, unlike the rules infractions alternative, does not go on to say "unless [an error] is repeated" after a warning. This omission, on the heels of express warning language in the rules infractions alternative, supports the conclusion that warnings are not relevant under the "inadvertent errors" alternative.

¶ 46. In conclusion, I make an observation about burden. The majority correctly points out that

Walgreen, as the employer, had the burden of proving that Operton was ineligible. Majority op. at ¶ 21. That observation goes to the burden of producing evidence. *See Consolidated Constr. Co. v. Casey*, 71 Wis. 2d 811, 820, 238 N.W.2d 758 (1976) ("burden of introducing credible evidence"). My attention is on the statutory interpretation arguments before us on appeal. In that respect, LIRC has the burden of persuading us that the statutory language at issue here has meaning that operates to deny Operton unemployment benefits. "As our supreme court stated in *Princess House*, the [unemployment benefits] statute should be 'liberally construed to effect unemployment compensation coverage for workers who are *economically dependent* upon others in respect to their wage-earning status.' " *Larson v. LIRC*, 184 Wis. 2d 378, 390, 516 N.W.2d 456 (Ct. App. 1994) (quoting *Princess House, Inc. v. DILHR*, 111 Wis. 2d 46, 62, 330 N.W.2d 169 (1983)).[1] I see nothing in LIRC's arguments explaining how the statutory definition of "substantial fault" can reasonably be read as providing a standard that excludes Operton's eight errors—over 20 months, with some errors several months apart—from the plain meaning of "one or more inadvertent errors." LIRC gives us no analysis, tethered to the statutory language, that provides a basis

---

[1] Several other court of appeals cases look to *Princess House, Inc. v. DILHR*, 111 Wis. 2d 46, 330 N.W.2d 169 (1983). *See DWD v. LIRC*, 2010 WI App 123, ¶ 19, 329 Wis. 2d 67, 792 N.W.2d 182 (similarly relying on *Princess House*); *DILHR v. LIRC*, 155 Wis. 2d 256, 268 n.5, 456 N.W.2d 162 (Ct. App. 1990) ("The Unemployment Compensation Act is remedial in nature and should be liberally construed."); *Grutzner S.C., Byron, Holland & Vollmer v. LIRC*, 154 Wis. 2d 648, 653, 453 N.W.2d 920 (Ct. App. 1990) ("The Act is designed to protect economically dependent individuals.").

for concluding that the frequency of "inadvertent errors" in this case reached some undefined "point" at which it converted to "substantial fault."

¶ 47. For these reasons, I concur.