Paulina S. Easterling, Plaintiff-Appellant,

v.

Labor and Industry Review Commission,
Defendant-Respondent,

Badger Bus Lines, Inc., Defendant.

Court of Appeals

*No. 2016AP190. Submitted on briefs August 12, 2016.
—Decided February 2, 2017.*

2017 WI App 18

(Also reported in 893 N.W.2d 265.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Victor Forberger*, Madison.

On behalf of the defendant-respondent, the cause was submitted on the brief of *William Sherlin Sample*, Madison.

Before Kloppenburg, P.J., Sherman and Blanchard, JJ.

¶ 1. SHERMAN, J. Paulina S. Easterling appeals a circuit court order that affirmed the decision of the Labor and Industry Review Commission (LIRC) denying Easterling's claim for unemployment benefits on the basis of substantial fault. As pertinent to our resolution of this appeal, LIRC based its decision on a finding that the conduct of Easterling that resulted in her termination was intentional, and not an "inadvertent error[]," as that phrase is used in Wis. Stat. § 108.04(5g) (2015–16).[1] For the reasons discussed below, we reverse the order of the circuit court and remand for further proceedings.

## BACKGROUND

¶ 2. In June 2014, Easterling was employed by Badger Bus Lines, Inc., as the driver of a van that transported individuals with special needs. Badger Bus Lines had a written "Wheelchair Tip Policy," which provided in relevant part:

> This policy seeks to inform all drivers about the serious matter of properly securing wheelchairs. Failure to properly secure wheelchairs can result in a wheelchair tipping during transport .... When a driver is providing service that transports wheelchair passengers and a wheelchair on that driver's vehicle tips ... management will perform an investigation into the cause of the incident. If it is determined that the cause of the tipping was due to the driver not fully securing the wheelchair in the vehicle, it will result in termination of the driver's employment ....

---

[1] All references to the Wisconsin Statutes are to the 2015–16 version unless otherwise noted.

In August 2013, Easterling signed a statement indicating that she understood the "Wheelchair Tip Policy," and that she had been informed that a violation of the policy would result in the termination of her employment.

¶ 3.  On June 22, 2014, Easterling was responsible for transporting a group of elderly passengers, one of whom was in a wheelchair. Easterling failed to secure that passenger's wheelchair to the floor of the van and, while Easterling was driving, the wheelchair tipped over. The following day, Easterling was informed that her employment was terminated because she had violated her employer's Wheelchair Tip Policy. We reference further details below in discussing LIRC's factual determinations.

¶ 4.  Following the termination of her employment, Easterling applied to the Department of Workforce Development (DWD) for unemployment benefits. DWD determined that Easterling was ineligible for benefits because she was discharged from her employment for substantial fault. *See* WIS. STAT. § 108.04(5g). An administrative law judge (ALJ) affirmed DWD's decision to deny Easterling unemployment benefits, but the ALJ did so on a different basis. The ALJ determined that Easterling was discharged for misconduct, *see* § 108.04(5), and did not address the issue of substantial fault.

¶ 5.  Easterling petitioned LIRC for review of the ALJ's decision. LIRC determined that Easterling's employment had not been terminated for misconduct. However, LIRC determined that Easterling had been discharged from her employment for substantial fault and was, on that basis, ineligible for unemployment benefits.

¶ 6. Easterling sought review of LIRC's decision by the circuit court. The circuit court affirmed LIRC's decision. Easterling appeals.

## DISCUSSION

¶ 7. Easterling contends that the circuit court erred in affirming LIRC's determination that she was ineligible to receive unemployment benefits because her employment had been terminated for "substantial fault" under a new provision in the law. *See* WIS. STAT. § 108.04(5g). We agree with Easterling, based on our conclusion that there is no credible and substantial evidence in the record on which reasonable persons could rely to make a decision that the alleged conduct by Easterling was intentional, and not an "inadvertent error[] made by the employee." *See* § 108.04(5g)(a)2 ("substantial fault" does not include "[o]ne or more inadvertent errors"). That is, relying without objection from LIRC on this court's prior definition of what "inadvertent error[]" means in this context, we reverse based on LIRC's findings of fact.

■

¶ 8. We review the decision of the administrative agency, rather than the decision of the circuit court. *Hilton v. DNR*, 2006 WI 84, ¶ 15, 293 Wis. 2d 1, 717 N.W.2d 166.

■

¶ 9. Whether Easterling was disqualified from receiving unemployment benefits under WIS. STAT. § 108.04(5g) presents a mixed question of fact and law. We will uphold LIRC's factual findings " 'if there is credible and substantial evidence in the record on which reasonable persons could rely to make the same

317

findings.' " *deBoer Transp., Inc. v. Swenson*, 2011 WI 64, ¶ 30, 335 Wis. 2d 599, 804 N.W.2d 658 (quoted source omitted).

■■

¶ 10.  Whether the facts give rise to substantial fault under Wɪꜱ. Sᴛᴀᴛ. § 108.04(5g) presents a question of law. Ordinarily, questions of law are reviewed de novo. *See id.*, ¶ 31. However, when our review is of an agency's interpretation of a statute, we afford the agency's interpretation one of three level's of deference:  no deference; due weight deference, or great weight deference. *Id.*, ¶¶ 31–35 (explaining the levels of deference and when they are applied).

¶ 11.  As should become clear from our discussion below, the standard of review that we apply to LIRC's interpretation of Wɪꜱ. Sᴛᴀᴛ. § 108.04(5g) does not matter in this appeal, because we do not resolve this appeal based on a dispute about the meaning of any pertinent term in the statute. Instead, on the issue that we conclude is dispositive, the parties dispute whether there is credible and substantial evidence in the record on which reasonable persons could rely to decide that Easterling's failure to secure the wheelchair was an inadvertent error as opposed to an intentional act.

■

¶ 12.  An individual seeking to claim unemployment benefits is presumed eligible for benefits, and the burden rests on the party resisting the payment of benefits to prove that the individual is disqualified from receiving benefits. *See Operton v. LIRC*, 2016 WI App 37, ¶ 21, 369 Wis. 2d 166, 880 N.W.2d 169 (Lundsten, J., concurring), *review granted,* 2016 WI 82, 371 Wis. 2d 616, 888 N.W.2d 236; *see also id.*, ¶¶ 32, 42–45 (concluding that LIRC erred in its construction and

application of "substantial fault" to the facts presented).[2] Badger Bus Lines asserted, and LIRC agreed, that Easterling was ineligible under Wis. Stat. § 108.04(5g) for benefits. Section 108.04(5g), which was enacted in 2013, provides:

> (a) An employee whose work is terminated by an employing unit for substantial fault by the employee connected with the employee's work is ineligible to receive benefits until . . . . For purposes of this paragraph, "substantial fault" includes those acts or omissions of an employee over which the employee exercised reasonable control and which violate reasonable requirements of the employee's employer but does not include any of the following:

> 1. One or more minor infractions of rules unless an infraction is repeated after the employer warns the employee about the infraction.

> 2. One or more inadvertent errors made by the employee.

> 3. Any failure of the employee to perform work because of insufficient skill, ability, or equipment.

---

[2] We would hold our decision pending our supreme court's decision if it appeared likely that that decision would provide direction in this appeal. However, that appears unlikely. As stated in our discussion below, we are guided by the definition of one statutory term, "inadvertent errors," provided by the court of appeals in *Operton v. LIRC*, 2016 WI App 37, 369 Wis. 2d 166, 880 N.W.2d 169 (Lundsten, J., concurring). *See infra* ¶ 17. However, the dispute in *Operton* is whether a "series of even inadvertent failures in their cumulative effect at some point goes beyond inadvertence to substantial fault." *Id.*, ¶ 39 (Lundsten, J., concurring). In *Operton*, LIRC "does not seriously dispute that Operton's errors, viewed individually, were all "inadvertent errors.'" *See Operton*, 369 Wis. 2d 166, ¶ 38 (Lundsten, J., concurring). In contrast, whether Easterling's one individual error was an "inadvertent error[]" is precisely the dispute here.

¶ 13. Under the new substantial fault provision, Wis. Stat. § 108.04(5g), an employee is now ineligible for unemployment benefits based on substantial fault only if all five of the following conditions are met: (1) the employee was discharged for an act or omission over which the employee exercised reasonable control; (2) the act or omission violated a reasonable requirement of the employer; (3) the act or omission was not a "minor infraction[]" of a rule or rules that was repeated after the employee had been warned by his or her employer about the "infraction"; (4) the act or omission was not an "inadvertent error[]"; and (5) the employee's failure to perform work was not due to insufficient skill, ability, or equipment. *See Operton*, 369 Wis. 2d 166, ¶¶ 34–37 (Lundsten, J., concurring).

¶ 14. We will assume without deciding that the first two conditions are met, and that Easterling's failure to secure the wheelchair was not a minor rule infraction and did not result from insufficient skill, ability, or equipment. This leaves the question of whether Easterling's failure to secure the wheelchair constituted an inadvertent error. We conclude that, based on the evidence in the record, Easterling's employment was not terminated for substantial fault because her failure to secure the wheelchair to the van was an inadvertent error.

¶ 15. In *Operton*, we stated that "[t]he term 'inadvertent' means 'failing to act carefully or considerately, inattentive; resulting from heedless action, unintentional.'" *Id.*, ¶ 25 (quoting *Inadvertent*, Collins English Dictionary (12th ed. 2014)). Neither party contests this definition, with its potentially multiple shades of meanings.

¶ 16.  We now return to the facts, as LIRC found them. LIRC found that Easterling "mistakenly failed to secure [a] passenger's wheelchair into place on the floor of the van." Along the same lines, LIRC found that Easterling "made sure that the passenger's wheelchair was positioned properly and that the wheelchair's brakes were applied, but in her haste to tend to other passengers, she forgot to secure the straps from the floor mounts of the van to the wheelchair." LIRC found that contributing factors to Easterling's failure to secure the wheelchair to the floor of the van was a lack of an experienced volunteer who was usually there to assist passengers into the van, the presence of three extra passengers whom Easterling had not expected, and a feeling of pressure to hurry because passengers were eager to get on the van and the van was parked at a crosswalk. Moreover, LIRC did not find that there was any evidence that Easterling had intentionally or willfully disregarded Badger Bus Line's wheelchair policy. *See generally id.*, ¶ 27.

¶ 17.  Based on all these findings, LIRC concedes on appeal that its findings "support a conclusion of inadvertence." LIRC appropriately explains that, given this concession, the decision by the agency is "inconsistent with previous commission decisions, such that no deference should be afforded the commission's legal conclusion of substantial fault in the instant case."

¶ 18.  Nevertheless, LIRC argues that particular evidence that was presented at the hearing before the ALJ supports LIRC's conclusion that Easterling's failure to secure the wheelchair to the van floor was not an inadvertent error. Those facts are the following:  after a volunteer put the wheelchair user on the bus, Easterling "made sure that his wheelchair was positioned

properly and that the wheelchair's brakes were applied," and thereafter Easterling failed to secure the wheelchair. LIRC argues that the fact that Easterling ensured that the wheelchair was properly positioned and the brakes were applied establishes that her failure to secure the wheelchair thereafter was "not inadvertence."

¶ 19. We fail to see how these additional facts constitute substantial evidence on which reasonable persons could rely to support a finding that Easterling—to borrow the definitional terms stated in *Operton*—did not fail to act carefully or considerately, that she was not inattentive or took a heedless action, in sum, that she did not act unintentionally. The fact that she ensured that the wheelchair was properly positioned and the brakes were applied certainly provides a context in which she *could have* decided not to secure the wheelchair. But they add only a weak inference at best that she did make that decision, an inference that is contradicted by all other evidence. LIRC points to no pattern of conduct, no admission or action inconsistent with inadvertence, or other substantial evidence that could support a finding that Easterling acted intentionally.

¶ 20. In an attempt to shore up this argument, LIRC asserts that Easterling's testimony at the hearing before the ALJ shows that Easterling "affirmatively chose to leave [the wheelchair passenger] with his wheelchair unsecured." However, the portion of Easterling's testimony that LIRC now cites only undermines LIRC's assertion. Easterling testified at the administrative hearing as follows:

[Question] . . . did you secure [the] wheelchair?

[Easterling] No, I didn't.

322

[Question] . . . Why not?

[Easterling] Because I was completely overwhelmed with the amount of people that [were] getting on. I got so . . . . I'm not going to even say distracted, but it was—four of [the passengers getting on the van] have hip problems. And it was to a point where, I got a little bit overwhelmed, and I decided to help the ladies get on, and . . . [an individual] put [the wheelchair passenger] onto the lift and got [the passenger] on board. But I was trying to help the other [passengers] get on, because we [were] pressed for time. And plus we[] [were] [parked] in . . . front of the church, where the crosswalk is and people needed to get past.

This testimony strongly supports the inference that her failure to secure the wheelchair was not an affirmative decision, that is to say intentional, but rather was the result of "heedless action" and "unintentional."

¶ 21. To repeat, LIRC found that Easterling "*mistakenly* failed to secure . . . [the] wheelchair" and that Easterling "*forgot*" to secure the wheelchair. LIRC does not challenge these findings as clearly erroneous and LIRC concedes that they support a conclusion that Easterling's failure to secure the wheelchair to the van was an inadvertent error. LIRC's argument that it is unreasonable to conclude that Easterling's failure to secure the wheelchair was an inadvertent error is not supported by the record. Accordingly, we reverse the circuit court's order affirming LIRC's decision and remand for further proceedings consistent with this opinion.[3]

---

[3] Because we conclude that the only reasonable finding available to LIRC based on the record is that Easterling's failure to secure the wheelchair was an inadvertent error, we do not address other issues raised by the parties and addressed

## CONCLUSION

¶ 22. For the reasons discussed above, we reverse and remand for further proceedings.

*By the Court.*—Order reversed and cause remanded for further proceedings.

---

at length in their appellate briefs. *See Sweet v. Berge,* 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (if a decision on one point disposes of the appeal, the court will not decide other issues raised).