**2022 WI App 58**

# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:          2021AP240

† Petition for Review filed

Complete Title of Case:


**TOWN OF LEDGEVIEW,**

**PETITIONER-RESPONDENT,**

**LEDGEVIEW FARMS LLC,**

**PETITIONER-APPELLANT,†**

**V.**

**LIVESTOCK FACILITY SITING REVIEW BOARD,**

**RESPONDENT-RESPONDENT.**


| | |
|---|---|
| Opinion Filed: | November 30, 2022 |
| Submitted on Briefs: | January 28, 2022 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Gundrum, P.J., Neubauer and Grogan, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Eric M. McLeod* and *Joseph S. Diedrich* of *Husch Blackwell LLP*, Madison. |

Respondent

ATTORNEYS: On behalf of the petitioner-respondent, the cause was submitted on the brief of *Paul G. Kent*, *Larry A. Konopacki*, *Vanessa D. Wishart*, and *Matthew V. Fisher* of *Stafford Rosenbaum LLP*, Madison.

On behalf of the respondent-respondent, the cause was submitted on the brief of, *Colin A. Hector*, assistant attorney general, and *Joshua L. Kaul*, attorney general.

COURT OF APPEALS
DECISION
DATED AND FILED

November 30, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP240**

**STATE OF WISCONSIN**

Cir. Ct. No. 2019CV1453

**IN COURT OF APPEALS**

---

TOWN OF LEDGEVIEW,

    PETITIONER-RESPONDENT,

LEDGEVIEW FARMS LLC,

    PETITIONER-APPELLANT,

  V.

LIVESTOCK FACILITY SITING REVIEW BOARD,

    RESPONDENT-RESPONDENT.

---

APPEAL from an order of the circuit court for Brown County: DONALD R. ZUIDMULDER, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Grogan, JJ.

¶1 GROGAN, J. Ledgeview Farms LLC ("Ledgeview Farms" or "the Farm") sought a Livestock Facility Siting Permit ("permit") from the Town of Ledgeview ("the Town") pursuant to WIS. STAT. § 93.90 (2019-20),[1] seeking to expand its current farming operations. The Town denied the permit on multiple grounds, and the Livestock Facility Siting Review Board ("the Board") affirmed the denial on one of those grounds. Both the Farm and the Town petitioned for judicial review, and the circuit court affirmed the Board's decision. On appeal, the Farm asserts that the assessment of an applicant's credibility cannot be based on the applicant's history of past violations of laws or an applicant's refusal to allow a political subdivision to inspect the premises as part of the application process.[2] We disagree and therefore affirm.

## I. BACKGROUND

¶2 Ledgeview Farms is a multi-generational, family-operated farm located in Brown County. From December 2017 through January 2019, the Farm submitted three applications to the Town seeking approval for a permit to expand its livestock facility. Only the second of these applications, filed on November 5, 2018, is at issue here. As described in its Complaint, the Farm sought the Town's approval for a permit that would allow it to "increase the number of animal units,

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] The Farm identified the issue as follows: "Can a political subdivision deny a permit for a proposed livestock facility based on either (a) existing facilities' past violations of laws other than the Siting Law, (b) the applicant's failure to allow inspection of existing facilities, or (c) concerns about the applicant's credibility based on (a) and (b)?" Because the Board affirmed the denial based on its conclusion that the Farm's application lacked credibility due to past legal violations related to runoff issues and its failure to allow the Town to inspect the premises pursuant to a valid inspection warrant, we have slightly reframed the issue.

construct a waste storage facility, expand an existing feed storage area, construct a new feed storage area, and construct a yard runoff transfer system." As relevant here, the application also included Worksheet 5, which pertains to "Runoff Management," which is one of the state standards under the Livestock Facility Siting Law. *See* WIS. ADMIN. CODE § ATCP 51.20 (May 2020);[3] *see also* WIS. STAT. § 93.90(2)(a) and WIS. ADMIN. CODE ch. ATCP 51 App. A. Among the information included on Worksheet 5 was a statement that the Farm "agrees to manage feed storage to prevent significant discharge of leachate or polluted runoff to waters of the state." The Town thereafter sought additional information from the Farm regarding its application, which, according to the Town, the Farm provided only in part.

¶3 As part of its application review process, "the Town notified … Ledgeview Farms that it intended to have Town zoning officials" inspect the Farm "to assess and verify the information contained in the Second Application." The Farm refused to allow an inspection, including after the Town obtained an inspection warrant pursuant to WIS. STAT. § 66.0119. In February 2019, the Town ultimately notified the Farm it would consider the application complete and would move forward with reviewing the Farm's application.

¶4 The Town thereafter held a public hearing in March 2019, during which it ultimately denied the application on multiple grounds. In its written decision detailing its denial, the Town described the Farm's application history, the Farm's "compliance history" related to various operational violations and corresponding enforcement actions the Wisconsin Department of Natural Resources (DNR) and the United States Environmental Protection Agency (EPA) pursued

---

[3] All references to WIS. ADMIN. CODE ch. ATCP 51 are to the May 2020 version.

against the Farm, the approvals the Farm sought from the Town, and the reasons for the Town's denial.

¶5    In explaining its denial, the Town first dismissed the Farm's application based on its determination that the Farm had constructively withdrawn its application when it refused to allow the Town to inspect the premises. Nevertheless, the Town went on to detail its substantive reasons for denying the permit application.  In general, the Town denied the application based on its determination that:

- Due to the Farm's "extensive history" of past noncompliance, violations, and "disregard for federal, state, and local laws," the Farm had failed to provide credible evidence that it would meet the applicable standards set forth in WIS. STAT. § 93.90 and WIS. ADMIN. CODE ch. ATCP 51, as required by WIS. ADMIN. CODE § ATCP 51.34(1)(b);

- The Farm's refusal to allow the Town to inspect its existing operations "degraded [the Farm's] credibility," particularly as to its compliance with runoff management;

- The Farm had made material misrepresentations warranting denial under WIS. ADMIN. CODE § ATCP 51.34(4);

- Existing storage facilities at the Farm violated multiple standards under WIS. ADMIN. CODE ch. ATCP 51, including structural failure and leakage of waste storage structures;

- The Town would be able to immediately withdraw approval based on noncompliance with WIS. STAT. § 93.90 and WIS. ADMIN. CODE ch. ATCP 51; and

- The application failed to comply with more stringent local standards the Town purported it had lawfully adopted.

¶6    Pursuant to WIS. STAT. § 93.90(5), Ledgeview Farms appealed the Town's denial to the Board, and after a June 2019 meeting, the Board issued a

4

written decision in July 2019[4] in which it concluded the Farm's challenge was valid in part and invalid in part. As relevant to the Farm's appeal, the Board affirmed the Town's denial on the sole ground that the Town had authority to deny the application on credibility grounds as it related to the Farm's history of violating state and federal laws and the Farm's refusal to allow the Town's attempted inspection. Specifically, the Board stated:

> The Town had the authority to deny the siting application, based upon a determination that the application was not credible, as it relates to the [Farm's] commitments to rectify continuing discharges and maintain practices, due to the following:
>
> - The [Farm's] history of violations of state and federal law including the ongoing violations determined by DNR in its November 14, 2018 inspection report prepared nine days after Ledgeview Farms submitted its second siting permit application, which included representations about the installation of the interim measures required by DNR.
>
> - The [Farm's] refusal to provide the Town access to the farm after being served with an inspection warrant that was issued for purposes directly related to securing information relevant to the siting application.
>
> Therefore, the [Farm's] challenge to this section of the Town's decision is denied.

The Board's related factual findings referenced Worksheet 5 of the Farm's application, which included commitments related to runoff management, and the Board's conclusion that the application's representations as to runoff management were not credible. The Board also noted its factual findings as to the Farm's history

---

[4] The Board issued an amended version of its written decision in August 2019 to correct a scrivener's error. Our references to the Board's written decision are to the corrected version.

of state and federal violations, including, but not limited to, the following violations related to various runoff management issues:

- "[D]ischarges from feed bunkers" and "manure runoff in a waterway";

- A September 2017 "DNR compliance inspection report" documenting and notifying the Farm of "discharges and other noncompliance including runoff controls for feed storage, barns, stacking areas and animal lots";

- A May 2018 "DNR evaluation" identifying "the absence of runoff controls for feed storage and an animal lot (creating risk of continuing discharge to nearby waterways)"; and

- A November 14, 2018 DNR letter notifying the Farm of an impending "deadline for responding to problems with interim measures intended to control runoff from feed storage areas, manure stacking areas and feedlots and a calf barn."[5]

¶7 Both the Farm and the Town[6] sought judicial review of the Board's decision—the Farm in the Dane County Circuit Court and the Town in the Brown County Circuit Court—and after a series of procedural matters irrelevant here, the cases were consolidated for decision in the Brown County Circuit Court, which

---

[5] This is not a complete list, but rather gives examples of the various types of runoff-related issues the Board noted in its factual findings. The Farm does not appear to dispute the accuracy of the violations the Board noted in its written decision.

[6] In support of its petition for judicial review, the Town argued that "the Board impermissibly overturned a number of grounds upon which the Town based its decision" to deny the permit and that "[i]n doing so, the Board exceeded its prescribed statutory authority and erred as a matter of law and fact." However, because we affirm the Board's determination that there were grounds to deny the permit, it is unnecessary to address the Town's complaints. Moreover, we note that the Town did not file a cross-appeal.

ultimately affirmed the Board.[7]  The circuit court relied on the Record, the Town's decision, and the Board's decision in determining that a permitting authority must have the "ability to judge the credibility, the accuracy of the information an applicant is filing with regard to [the authority's] obligations to exercise a discretionary decision" and that the permitting authority must have "the ability to ask questions that are relevant to the exercise of their public responsibility."[8]  The Farm now appeals.

## II. DISCUSSION

¶8      The Farm appeals the circuit court's decision affirming the Board. Because this is an action seeking judicial review of an agency decision under WIS. STAT. ch. 227, we review the Board's decision, rather than the circuit court's decision, on appeal.  *See Tetra Tech EC, Inc. v. DOR*, 2018 WI 75, ¶84, 382 Wis. 2d 496, 914 N.W.2d 21 (we "review the administrative agency's decision, not that of the circuit court" on appeal); *Easterling v. LIRC*, 2017 WI App 18, ¶8, 374 Wis. 2d 312, 893 N.W.2d 265.  If we conclude "that the agency has erroneously interpreted

---

[7] This case has a lengthy procedural history that is irrelevant for our purposes on appeal, and therefore we recount it only briefly.  The Farm initially filed a Summons and Complaint in Dane County Circuit Court Case Number 2019CV2050, which it alternatively pled as a petition for judicial review, seeking review of the Board's grounds for affirming the denial of its permit application.  After the Board re-issued its decision to correct an error, the Farm filed a second Summons and Complaint, again alternatively pled as a petition for judicial review, in Dane County Circuit Court Case Number 2019CV2860.  The Town was allowed to intervene in the earlier filed matter, and the two Dane County Circuit Court cases were eventually consolidated.  Meanwhile, the Town filed its own petition for judicial review in the Brown County Circuit Court, seeking review of the Board's decision to the extent it rejected the Town's bases for denying the permit application.  The consolidated Dane County cases were ultimately transferred to Brown County, and the Brown County Circuit Court thereafter consolidated the Dane County cases with the Brown County case.

[8] Because it affirmed the Board's decision, the circuit court dismissed the Town's petition and therefore did not address the Town's arguments that the Board had exceeded its authority as to its reasons for rejecting the Town's denial.

a provision of law and a correct interpretation compels a particular action," we will "set aside or modify the agency action" or "remand the case to the agency for further action under a correct interpretation of the provision of law." WIS. STAT. § 227.57(5). We will "not substitute [our] judgment for that of the agency as to the weight of the evidence on any disputed finding of fact[,]" but we will "set aside agency action or remand the case to the agency if [we] find[] that the agency's action depends on any finding of fact that is not supported by substantial evidence in the record." WIS. STAT.§ 227.57(6). If the agency proceeds without a hearing and "the agency's action depends on facts determined without a hearing," we will either "set aside, modify or order agency action if the facts compel a particular action as a matter of law" or "remand the case to the agency for further examination and action within the agency's responsibility." WIS. STAT. § 227.57(7).

¶9 We do not defer "to the agency's interpretation of law." WIS. STAT. § 227.57(11); *Tetra Tech*, 382 Wis. 2d 496, ¶108. However, "we will give 'due weight' to the experience, technical competence, and specialized knowledge of an administrative agency as we consider its arguments." *Tetra Tech*, 382 Wis. 2d 496, ¶108; WIS. STAT. § 227.57(10).

¶10 When reviewing statutory language, this court "ascertain[s] and appl[ies] the plain meaning of the statutes as adopted by the legislature." *White v. City of Watertown*, 2019 WI 9, ¶10, 385 Wis. 2d 320, 922 N.W.2d 61. "[S]tatutory interpretation 'begins with the language of the statute[,]'" and the "language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶¶45-46, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted) ("Context is important to meaning. So, too, is the structure of the statute in which the operative language appears. Therefore,

statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results.").

¶11 We apply the same interpretative framework to administrative code provisions. *Envirologix Corp. v. City of Waukesha*, 192 Wis. 2d 277, 291, 531 N.W.2d 357 (Ct. App. 1995) ("The rules of statutory construction apply to the construction of an administrative rule."). Interpretation of administrative code provisions presents "a question of law which we review independently." *Id.* "Administrative rules and statutory provisions dealing with the same subject matter are read together and harmonized if possible." *Id.* If there is a conflict "between a statute and an administrative rule, the statute prevails." *Grafft v. DNR*, 2000 WI App 187, ¶12, 238 Wis. 2d 750, 618 N.W.2d 897.

*A. The Siting Law*

¶12 In 2004, the legislature enacted WIS. STAT. § 93.90, commonly referred to as the Livestock Facility Siting Law ("Siting Law"), *see* 2003 Wis. Act 235, § 2,[9] "for the purpose of providing uniform regulation of livestock facilities" as a matter of "statewide concern[.]" WIS. STAT.§ 93.90(1). As our supreme court explained in *Adams v. State Livestock Facilities Siting Review Board*, 2012 WI 85, ¶2, 342 Wis. 2d 444, 820 N.W.2d 404—one of the only cases addressing WIS. STAT. § 93.90—by enacting the Siting Law, "the legislature has taken steps to balance the important interest in protecting precious natural resources with the important interest in encouraging a robust and efficient agricultural economy[,]" and "[a]s a

---

[9] The legislature thereafter made a minor amendment in 2013 to include additional statutory cross-references, *see* 2013 Wis. Act 80, § 21, and in 2017, it added the title "Statewide concern" to WIS. STAT. § 93.90(1), *see* 2017 Wis. Act. 365, § 44.

central component of balancing these interests, the legislature has strictly limited the ability of political subdivisions to regulate the livestock facility siting process."

¶13    In *Adams*, then-Chief Justice Shirley Abrahamson noted that "[t]he Siting Law is a complex statute.  It is difficult to fit its various provisions together with the related provisions of the Wisconsin Administrative Code and apply them in a coherent, cohesive manner." *Adams*, 342 Wis. 2d 444, ¶68 (Abrahamson, C.J., dissenting).  These words are prescient when viewed in the context of the present matter, which requires that we construe multiple related and cross-referenced statutory and administrative code provisions to determine whether the Board erred in concluding it was appropriate to deny the Farm's application on credibility grounds.[10]  To answer this question, we must review the relevant Siting Law statutes and related administrative code provisions to determine the interplay amongst them.

¶14    The Farm suggests that WIS. STAT. § 93.90(3)(a) is the proper analytical starting point and directs our attention to *Adams*, pointing out that the *Adams* court "conclude[d] that the legislature has expressly withdrawn from political subdivisions the power to regulate livestock facility siting in any manner not prescribed by the Siting Law" and confirmed that a political subdivision cannot

---

[10] The Farm suggests that the Board did not comply with WIS. STAT. § 93.90(5)(c)'s requirement that the Board "make its decision without deference to" the Town's decision because the Board determined that "[t]he Town had the authority to deny the siting application, based upon a determination that the application was not credible" for multiple reasons.  However, having reviewed the Board's decision and the Record, it is clear that the Board made an independent decision.  Nothing prevents the Board from referencing the Town's decision or analysis, and much like we benefit from the circuit court's decision in reviewing an appeal of a summary judgment decision, *see, e.g.*, *Krier v. Vilione*, 2009 WI 45, ¶14, 317 Wis. 2d 288, 766 N.W.2d 517 (when reviewing a grant or denial of summary judgment on appeal, we review such issues independently, "but we benefit from the lower courts' analyses"), the Board benefits from the Town's analysis.

"disapprove livestock facility siting permits unless one of eight narrow exceptions" identified in § 93.90(3)(a) applies. *Adams*, 342 Wis. 2d 444, ¶¶40, 50.

¶15      In support of its assertion, the Farm first argues that the Board erred in determining it could deny the Farm's permit application based on credibility grounds related to the Farm's history of violations and refusal to allow an inspection because these are not statutorily enumerated grounds for permit denial under WIS. STAT. § 93.90(3)(a).  Second, the Farm relies on *Adams* in support of its related argument that in order to harmonize the Siting Law with its corresponding administrative code provisions, any credibility consideration under WIS. ADMIN. CODE § ATCP 51.34(1)(b) must be:  (1) based solely on the Farm's application and without reference to any other information in the Record; and (2) read in conjunction with the specific exceptions set forth in § 93.90(3).  For the reasons that follow, we reject the Farm's assertions based on our conclusions that this matter is distinguishable from *Adams* because it presents a question the *Adams* court did not address and because our analysis of whether the Board erred must begin with WIS. STAT. § 93.90(4)(d), rather than § 93.90(3)(a).

¶16      In *Adams*, the Town of Magnolia granted a permit under WIS. STAT. § 93.90; however, it subjected the permit to certain conditions.  *Adams*, 342 Wis. 2d 444, ¶1.  The applicant appealed some of the imposed conditions to the Board, and the Board affirmed with modifications.  *Id.*, ¶¶14-16.  The Town of Magnolia thereafter appealed to the circuit court, which vacated the Board's decision and remanded to the Board for further proceedings, and we then reversed the circuit court on appeal.[11]  *Id.*, ¶¶17, 19.  On review, the supreme court affirmed our decision

---

[11] *Adams v. State Livestock Facilities Siting Rev. Bd.*, 2010 WI App 88, 327 Wis. 2d 676, 787 N.W.2d 941, *aff'd*, 2012 WI 85, 342 Wis. 2d 444, 820 N.W.2d 404.

based on its conclusion that the Town of Magnolia had violated the Siting Law in imposing the challenged conditions. *Id.*, ¶2.

¶17 The issues presented in *Adams* resulted in the supreme court: (1) addressing the applicability of "Wisconsin's preemption doctrine in order to establish a foundation upon which to analyze the plain language of the statute and the [Town of Magnolia's] actions"; (2) "analyz[ing] the plain language of the Siting Law[, which led it to] determine that [the Siting Law] preempts political subdivisions from regulating livestock facility siting in any manner inconsistent with the Siting Law"; (3) "evaluat[ing] whether the [Town of Magnolia's] actions were consistent with the Siting Law" and concluding they "were not" consistent; and (4) "evaluat[ing] whether the Siting Board was entitled to modify the conditions of the siting permit[.]" *Id.*, ¶27.

¶18 Specifically, in regard to its analysis of the Siting Law's plain language, the *Adams* court largely focused on WIS. STAT. § 93.90(3)(a)1-9, which provides that, notwithstanding certain cross-referenced statutory provisions, "a political subdivision may not disapprove or prohibit a livestock facility siting or expansion unless at least one of" the eight enumerated exceptions applies. Sec. 93.90(3)(a); *see Adams*, 342 Wis. 2d 444, ¶40. Having analyzed § 93.90(3)(a) within the context of the facts at hand, the *Adams* court determined that § 93.90(3)(a)1-9 provided "narrow exceptions that allow a political subdivision to disapprove a livestock facility siting permit." *Adams*, 342 Wis. 2d 444, ¶¶43-45. Having reached that conclusion, the supreme court turned its attention to § 93.90(3)(a)6, which was the provision at issue in that case, and determined the

12

challenged conditions exceeded what the Siting Law allowed.[12]  *Adams*, 342 Wis. 2d 444, ¶¶45, 56.

¶19    Importantly, the permit application itself was not at issue in *Adams*, which is evident given that *Adams* did not address (let alone cite) the primary statutory and administrative code provisions related to the application requirements and process for seeking a permit under the Siting Law as set forth in WIS. STAT. § 93.90(4), WIS. ADMIN. CODE § ATCP 51.30, and WIS. ADMIN. CODE § ATCP 51.34(1) and (2).  It therefore appears that the *Adams* court simply assumed the applicant complied with the application requirements set forth in those provisions and that it was therefore entitled to a permit, but for the applicability of a WIS. STAT. § 93.90(3)(a) exception.

¶20    Here, however, the Board affirmed the permit denial based on the credibility component of those threshold application requirements, and we are therefore tasked with addressing the very provisions and question the *Adams* court left unaddressed—namely, under what circumstances, if any, a political subdivision can deny a permit application under the Siting Law based on a failure to comply with the requirements set forth in WIS. STAT. § 93.90(4), WIS. ADMIN. CODE § ATCP 51.30, and WIS. ADMIN. CODE § ATCP 51.34(1) and (2).

¶21    WISCONSIN STAT. § 93.90(4) sets forth numerous requirements related to the application itself and the application process.  In addition to setting

---

[12] WISCONSIN STAT. § 93.90(3)(a)6 provides an exception where "[t]he proposed new or expanded livestock facility will have 500 or more animal units and violates a requirement that is more stringent than the state standards under sub. (2)(a) if the political subdivision" both "[a]dopts the requirement by ordinance before the applicant files the application for approval" and "[b]ases the requirement on reasonable and scientifically defensible findings of fact, adopted by the political subdivision, that clearly show that the requirement is necessary to protect public health or safety." Sec. 93.90(3)(a)6.a-b.

certain timeframes in which a political subdivision must take action upon receiving an application under the Siting Law, § 93.90(4)(d) provides:

> *If* an applicant complies with the rules promulgated under sub. (2)(e)1. *and* the information and documentation provided by the applicant is sufficient to establish, without considering any other information or documentation, that the application complies with applicable requirements for approval, the political subdivision *shall approve the application unless* the political subdivision finds, *based on other clear and convincing information or documentation in the record*, that the application *does not comply* with applicable requirements.

Sec. 93.90(4)(d) (emphases added).

¶22    Based on the clear language of this statute, an applicant meets the threshold requirement for obtaining approval *if* the applicant:  (1) "complies with the rules promulgated under sub. (2)(e)1"; *and* (2) provides "information and documentation … [that] is sufficient to establish, without considering any other information or documentation, that the application complies with applicable requirements for approval[.]"  WIS. STAT. § 93.90(4)(d).  This "if/and" sentence structure indicates that an applicant must meet both requirements and that where an applicant fails to comply with the first requirement—compliance "with the rules promulgated under sub. (2)(e)1"—it is unnecessary to further determine whether the applicant also complied with the second requirement.  Additionally, even if an applicant otherwise complies with these requirements, the plain statutory language here *also* permits a political subdivision to deny a permit application where there is "clear and convincing information or documentation in the record" establishing "that the application does not comply with applicable requirements."  Sec. 93.90(4)(d).  Accordingly, § 93.90(4)(d) provides a clear stand-alone basis for permit denial separate and apart from WIS. STAT. § 93.90(3)(a).  To determine what

14

requirements an applicant must comply with to avoid denial at the outset, we must look to WIS. STAT. § 93.90(2)(e)1.

¶23     WISCONSIN STAT. § 93.90(2)(e)1 directs the Department of Agriculture, Trade, and Consumer Protection ("DATCP") to "[s]pecify the information and documentation that must be provided in an application for approval in order to demonstrate that a livestock facility siting or expansion complies with applicable state standards under sub. (2)(a)."     Sec. 93.90(2)(e)1. Section 93.90(2)(a), in turn, requires DATCP to "promulgate rules specifying standards for siting and expanding livestock facilities." Read together, an applicant seeking a permit under the Siting Law must submit specific information and documentation as determined by DATCP that shows the "livestock facility siting or expansion complies" with the state standards DATCP promulgated pursuant to § 93.90(2)(a). *See* §§ 93.90(2)(a), 93.90(2)(e)1. As § 93.90(2)(a) directed it to do, DATCP engaged in "an extensive rulemaking process" and "fulfilled its legal duty [by] promulgat[ing] Wisconsin Administrative Code ch. ATCP 51 … on May 1, 2006." *Adams*, 342 Wis. 2d 444, ¶7. As it pertains to the application process, we next look to WIS. ADMIN. CODE §§ ATCP 51.30 ("Application") and 51.34 ("Granting or denying an application") to determine what an applicant must actually submit to show compliance with the Siting Law's specific state standards.

¶24     WISCONSIN ADMIN. CODE § ATCP 51.30 sets forth general application requirements for applicants seeking a permit under the Siting Law. Of relevance here, it provides:

> If local approval is required for a new or expanded livestock facility, a person seeking local approval shall complete and file with the political subdivision the application form shown in *Appendix A*. The application shall include all of the information required by *Appendix A* and attached *worksheets*, including any authorized modifications made by

15

> the political subdivision under sub. (2). *The information contained in the application shall be credible and internally consistent.*

Sec. ATCP 51.30(1) (final emphasis added). The Appendix worksheets referenced in this provision relate to the various state standards DATCP promulgated pursuant to WIS. STAT. § 93.90(2)(a)'s directive. *See* WIS. ADMIN. CODE ch. ATCP 51 App. A. Thus, when the statutory and administrative code provisions described thus far are read together, in order to comply with WIS. STAT. § 93.90(4)(d)'s first requirement (compliance with specific DATCP application requirements), an applicant must submit internally consistent and credible information and documentation that establishes the proposed new or expanded livestock facility will comply with the state standards DATCP promulgated pursuant to the legislature's directive. *See* §§ 93.90(2)(a), 93.90(2)(e)1, 93.90(4)(d), and WIS. ADMIN. CODE § ATCP 51.30(1). If an applicant does not so comply, a political subdivision need not grant the requested permit. *See* § 93.90(4)(d).

¶25 Our review of the applicable statutory and administrative code provisions does not stop there, however, as DATCP also promulgated WIS. ADMIN. CODE § ATCP 51.34, which is entitled "[g]ranting or denying an application" and refers back to WIS. ADMIN. CODE § ATCP 51.30. Section ATCP 51.34(1) addresses when a political subdivision "shall" grant an applicant's permit request, and § ATCP 51.34(2) addresses the circumstances where a political subdivision has authority to deny the requested permit. Specifically, those sections provide:

> (1) GRANTING AN APPLICATION. Except as provided in sub. (2), a political subdivision *shall grant* an application under s. ATCP 51.30(1) *if all of the following apply*:
>
> (a) The application complies with s. ATCP 51.30.
>
> (b) The application contains sufficient credible information to show, in the absence of clear and convincing information to the contrary, that *the*

16

*proposed livestock facility meets* or is exempt from *the standards in subch. II* [the Livestock Facility Siting Standards]. To the extent that a standard under subch. II vests discretion in a political subdivision, the political subdivision may exercise that discretion.

(2) DENYING AN APPLICATION. A political subdivision *may deny* an application under s. ATCP 51.30 *if any of the following apply*:

(a) The application fails to meet the standard for approval under sub. (1).

(b) The political subdivision finds, based on other clear and convincing information in the record under s. ATCP 51.36, that the proposed livestock facility fails to comply with an applicable standard under subch. II.

Sec. ATCP 51.34(1)-(2) (emphases added). A plain reading of § ATCP 51.34(2) thus establishes that a political subdivision has authority to deny an application if it does not contain credible and internally consistent information establishing that a new or expanded livestock facility will comply with the state standards identified in WIS. ADMIN. CODE ch. ATCP 51 subch. II.

¶26 Considering WIS. STAT. § 93.90(4)(d) and its cross-referenced statutory and administrative code provisions as a whole, the plain language establishes that one requirement an applicant seeking a permit under the Siting Law must comply with in order to obtain approval for a permit is that the application must provide credible information showing that the proposed siting or expansion will comply with the state standards set forth in WIS. ADMIN. CODE ch. ATCP 51 subch. II. Failure to do so provides a political subdivision with the authority to deny a permit—regardless of whether any of the enumerated exceptions set forth in WIS. STAT. § 93.90(3)(a) apply. *See* § 93.90(4)(d); WIS. ADMIN. CODE §§ ATCP 51.30, 51.34.

¶27 The Farm argues that credibility under WIS. ADMIN. CODE §§ ATCP 51.30 and 51.34 must be: (1) based solely on the application itself, without reference to any other information or documentation in the record; and (2) tied directly to the exceptions set forth in WIS. STAT. § 93.90(3)(a) in order to harmonize the various Siting Law and related administrative code provisions. The Farm is incorrect.

¶28 First, to conclude that "credible," as used in WIS. ADMIN. CODE §§ ATCP 51.30 and 51.34, limits a credibility determination solely to the information provided in the application is illogical. "Credible" is generally defined as "reasonable" or "believable." *See Credible*, THE OXFORD ENGLISH DICTIONARY (3d ed. 2013) ("[a]ble to be believed in, justifying confidence"; "convincingly true or accurate"); *Credible*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/credible (last visited Oct. 21, 2022) ("offering reasonable grounds for being believed"); *Evidence*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("credible evidence" is "[e]vidence that is worthy of belief; trustworthy evidence"). When evaluating credibility, we often instruct the factfinder to consider multiple factors, such as a witness's demeanor and conduct, reasonableness, motives for providing false testimony, and "'all other facts and circumstances'" that might support or discredit a witness's testimony. *See, e.g.*, **State v. Bell**, 2018 WI 28, ¶56, 380 Wis. 2d 616, 909 N.W.2d 750. Thus, in the context of evaluating a witness's testimony, a factfinder is not limited solely to considering a witness's words, but rather can—and should—consider the witness's demeanor, tone, motives, conduct, and the context in which the testimony arises.

¶29 We believe the same approach is appropriate here. In other words, determining whether an application contains credible information is not limited merely to the words the applicant chooses to provide on the application. Rather, the

credibility of the information provided must be determined within the context of *all* clear and convincing information and documentation that is part of the record. *See* WIS. ADMIN. CODE § ATCP 51.34(1)(b) ("The application contains sufficient credible information to show, *in the absence of clear and convincing information to the contrary*, that the proposed livestock facility meets … the standards in subch. II." (Emphasis added.)); WIS. STAT. § 93.90(4)(d) ("unless the political subdivision finds, *based on other clear and convincing information or documentation in the record*, that the application does not comply with applicable requirements" (emphasis added)).[13] To conclude otherwise would lead to a potentially absurd result wherein an applicant could simply fill out an application indicating its commitment to comply with the state standards, despite the applicant having no *actual* commitment to follow through with what it promised to do in the application materials. *See **Kalal***, 271 Wis. 2d 633, ¶46 (we interpret statutory language "reasonably, to avoid absurd or unreasonable results"). This is precisely why additional information in the record, as the statutory language and administrative code provisions suggest, plays a pivotal role in determining whether the information provided in the application is credible. Without consideration of such additional information and documentation, a political subdivision would act as little more than a "rubber stamp" approving whatever an applicant chose to state in the application.

---

[13] WISCONSIN STAT. § 93.90(4)(b) and (c) support this conclusion as they both reference use of information *in addition* to the application. *See* WIS. STAT. § 93.90(4)(b) ("A political subdivision shall make a record of its decision making on an application for approval, *including a recording of any public hearing, copies of documents submitted at any public hearing, and copies of any other documents provided* to the political subdivision in connection with the application for approval." (Emphasis added.)); WIS. STAT. § 93.90(4)(c) ("A political subdivision shall base its decision on an application for approval on written findings of fact that are supported *by the evidence in the record* under par. (b)." (Emphasis added.)); *see also* WIS. ADMIN. CODE § ATCP 51.36(3) and (4).

¶30 We also reject the Farm's assertion that credibility determinations under the application requirement provisions must be read specifically in conjunction with WIS. STAT. § 93.90(3)(a) in order to harmonize the Siting Law and related administrative code provisions. To the contrary, a harmonized reading of these provisions requires that we must *first* determine whether the application complies with WIS. STAT. § 93.90(4)(d) and WIS. ADMIN. CODE §§ ATCP 51.30 and 51.34 *prior to* considering whether any of § 93.90(3)(a)'s exceptions apply. This must be so because it would be illogical to determine whether an enumerated exception applies prior to determining whether the application complies with the general application requirements in the first place. Moreover, were we to conclude, as the Farm does, that credibility determinations must be directly related to § 93.90(3)(a)'s exceptions, we would both write § 93.90(4)(d)'s stand-alone basis for denial out of the statute and fail to give effect to the political subdivision's authority to consider *any* clear and convincing information and documentation in the record that is related to the question of whether the application complies with all of the applicable requirements. *See Kalal*, 271 Wis. 2d 633, ¶46 (we do not interpret statutory language "in isolation," but rather "as part of a whole[,]" and we interpret statutory language "to give reasonable effect to every word, in order to avoid surplusage").

¶31 Thus, a harmonized reading of the Siting Law and WIS. ADMIN. CODE ch. ATCP 51 requires that credibility determinations be made based on both the application materials *and* additional clear and convincing documentation and information in the record—whether it supports the application materials or does not. Only if the application satisfies *all* requirements in WIS. STAT. § 93.90(4)(d) and WIS. ADMIN. CODE §§ ATCP 51.30 and 51.34 do we look to the exceptions enumerated in WIS. STAT. § 93.90(3)(a).

¶32     In summary, we conclude that WIS. STAT. § 93.90(4)(a), WIS. ADMIN. CODE § ATCP 51.30, and WIS. ADMIN. CODE § 51.34 set forth threshold application requirements an application must meet in order to obtain a permit under the Siting Law and that where clear and convincing information and documentation in the record establishes that the application is not credible as to compliance with the Siting Law's state standards, a political subdivision has the authority to deny the application.

### B. The Farm's Application, the Town's Denial, and the Board's Decision

¶33     Having set forth the applicable law, we turn now to the Farm's permit application.  Here, the Town requires local approval for new or expanded livestock facilities.  TOWN OF LEDGEVIEW, WIS., ORDINANCE § 135-81(B)(19) (Dec. 18, 2018), https://ecode360.com/8435998.  As explained above, the Farm submitted multiple permit applications, although only the second of those applications is at issue here.  To determine whether the Board erred, we begin by reviewing whether the Board correctly determined that the application did not comply with the threshold application requirements set forth in WIS. STAT. § 93.90(4)(d) and WIS. ADMIN. CODE §§ ATCP 51.30 and 51.34.

¶34     On appeal to the Board, the Board affirmed the Town's denial because it concluded, based on information and documentation in the Record, that the Farm's application failed to provide credible information as required by WIS. ADMIN. CODE §§ ATCP 51.30 and 51.34.[14]  Specifically, the Board determined that

---

[14] The Farm correctly points out that the word "credible" does not appear in WIS. STAT. § 93.90 and appears only in the corresponding code provisions.  This does not impact our analysis, however, because in enacting WIS. STAT. § 93.90(2)(e)1, the legislature itself directed DATCP to promulgate rules as to what type of information and documentation is required in an application submitted under the Siting Law.  The requirement that the applicant provide credible information is therefore effectively incorporated into the statutory requirements by reference.

the application was not credible as to Worksheet 5, which relates to the state standard for runoff management set forth in WIS. ADMIN. CODE § ATCP 51.20. It reached this conclusion based on multiple factors, including the Farm's history of violations related to manure runoff in waterways, runoff issues related to feed storage areas, noncompliance with DNR runoff requirements, continued risks of runoff to nearby waterways, failure to comply with deadlines addressing runoff issues, recent failure to comply with DNR requirements related to runoff requirements, and the Farm's failure to allow the Town to inspect its current facilities despite a valid warrant to do so.

¶35    While the violations the Board considered were not identified as direct violations of the Siting Law, the nature of these violations was nevertheless directly related to the state standard for runoff management—and there was clear and convincing information and documentation related to those violations in the Record. *See* WIS. ADMIN. CODE §§ ATCP 51.20, 51.30, and 51.34.[15]  For example, § ATCP 51.20 provides that "[r]unoff from an animal lot may not discharge to any direct conduit to groundwater" (§ ATCP 51.20(2)(b)) and that "[f]eed storage shall be managed to prevent any significant discharge of leachate or polluted runoff from stored feed to waters of the state" (§ ATCP 51.20(3)(a)).  The DNR violations referenced in the Board's decision related specifically to runoff issues related to manure runoff and runoff from feed storage areas, and the Board noted that the runoff created risks of "continuing discharge to nearby waterways[.]"  Not only were these violations numerous—they were recent and ongoing.

---

[15] WISCONSIN ADMIN. CODE § ATCP 51.20(8) provides that there is a presumption that "[f]or purposes of local approval, a livestock facility is presumed to comply with this section[.]" However, the presumption applies *only if* the application complies with WIS. ADMIN. CODE § ATCP 51.30, which requires that the application contain credible information and documentation. *See* §§ ATCP 51.20(8), 51.30.

¶36    The Farm also argues that the Board could not consider these violations in its credibility determination because they related to a pre-existing site and not the proposed site or facilities identified in the application.  We disagree. While the application may have been for a proposed expansion that included certain new facilities, it was nevertheless a proposal related to a site the Farm intended to operate.  It would be unreasonable to conclude that the Board must turn a blind eye to the Farm's past actions and inactions specifically related to runoff management, a state standard under the Siting Law, in determining whether the information in the application was credible simply because the proposal was for a new site or facility.

¶37    Rather, the Farm's actions and inactions were directly related to the state standards, and so long as that information was part of the Record—which it was in this case—it is exactly the type of information that is relevant to a credibility determination.  *See* WIS. STAT. § 93.90(4)(d) and WIS. ADMIN. CODE §§ ATCP 51.30 and 51.34.  Similarly, it was reasonable for the Board to consider the Farm's refusal to allow the Town to inspect the Farm's facilities despite the Town having obtained a valid inspection warrant as part of its credibility determination because the Town's interest in inspecting the premises was directly related to the Farm's application.[16]

¶38    Because there was clear and convincing information and documentation in the Record from which the Board could conclude that the application was not credible as it relates to the Farm's commitments related to the

---

[16] The Farm argues that neither its refusal to allow the Town to inspect the premises nor its history of past violations of non-Siting Law state standards could serve as a basis for denying its application because those reasons are not exceptions enumerated in WIS. STAT. § 93.90(3)(a). Based on our conclusion that the Board did not err in denying the permit on credibility grounds, it is unnecessary to determine whether the refusal and past violations of related laws provide a stand-alone basis for permit denial.  *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (when one issue is dispositive of an appeal, we need not reach other issues).

runoff-management state standard, the Board did not err in denying the Farm's application on credibility grounds.  *See* WIS. STAT. § 93.90(4)(d) and WIS. ADMIN. CODE §§ ATCP 51.30 and 51.34.

*By the Court.*—Order affirmed.