COURT OF APPEALS
DECISION
DATED AND FILED

October 3, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2021AP2192**

STATE OF WISCONSIN

Cir. Ct. No.  2020CV170

IN COURT OF APPEALS
DISTRICT III

PREMIUM PROPERTIES LIMITED PARTNERSHIP,

  PETITIONER-APPELLANT,

 V.

WISCONSIN DEPARTMENT OF SAFETY AND PROFESSIONAL SERVICES,

  RESPONDENT-RESPONDENT.

APPEAL from an order of the circuit court for Pierce County: ELIZABETH ROHL, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Premium Properties Limited Partnership appeals a circuit court order affirming a notice of violations and orders ("the notice") against

Premium Properties by the Wisconsin Department of Safety and Professional Services ("the DSPS"). The notice required Premium Properties to submit building change of use plans and fire suppression plans to the DSPS for review and approval.

¶2 On appeal, Premium Properties contends that the administrative law judge's (ALJ) findings at a hearing challenging the notice were not supported by substantial evidence. Premium Properties also argues that the DSPS exceeded its authority and that its policy of classifying fireworks as "high hazard" in certain circumstances is unenforceable. For the reasons that follow, we affirm the circuit court's order.

## BACKGROUND

¶3 In 2002, while Premium Properties was constructing a 9,600-square-foot building in Merrill, it submitted building plans to the DSPS.[1] The DSPS issued a conditional approval letter in June 2002. Based upon the building plans provided by Premium Properties, the approval letter described the building as a "Ch. 54 New-Office/Warehouse" and listed the occupancy as "Business, Storage." Since the building's completion in 2003, it has always been used for the retail sale and storage of fireworks.

---

[1] In June 2002, the Department of Commerce, Division of Safety and Building, was responsible for enforcing sections of the building code. In 2011, enforcement of the building code was transferred to the DSPS. We will therefore refer to the DSPS as the enforcing agency throughout this opinion.

¶4      In 2018, the DSPS filed the notice against Premium Properties.[2] According to Randall Dahmen, P.E.—an employee of the DSPS since January 1995 who had reviewed over 4,600 commercial buildings—the DSPS discovered that the building should not have been conditionally approved because the agency did not know in June 2002 that the building would be used for the retail sale and storage of fireworks. Specifically, the DSPS concluded that Premium Properties was in violation of: WIS. ADMIN. CODE § SPS 361.03(11) (July 2023)[3] (requirements for change of occupancy or use); § SPS 361.30(1) (plan review and approval); and an International Building Code (IBC) section that requires an automatic sprinkler system for "Group H occupancies."[4] The notice directed Premium Properties to submit building change of use plans and fire suppression plans to the DSPS for review and approval.

¶5      Premium Properties requested a hearing and argued that the notice was unlawful and unreasonable. Specifically, Premium Properties argued that since 2002 there had not been a change in the building's occupancy or use and that the building's physical structure had not changed. It also argued that the DSPS originally determined the building's occupancy to be "moderate hazard," that the IBC was not adopted until after the building was approved by the DSPS, and that

---

[2] The DSPS first filed the notice against Scott DeGross (an employee of Premium Properties since October 2000) and Victory Fireworks, but it later amended the notice to name Premium Properties.

[3] All references to Chapter SPS 361 of the Wisconsin Administrative Code are to the July 2023 register unless otherwise noted.

[4] Under WIS. ADMIN. CODE § SPS 361.05, the DSPS adopted parts of the IBC. Specifically, the DSPS adopted the IBC in July 2002, the month after the DSPS conditionally approved Premium Properties' building. According to Dahmen, the DSPS implements the building code in place at the time the building plan is submitted to the agency. *See also* WIS. ADMIN. CODE § SPS 361.03(2) (addressing retroactivity).

the DSPS could not retroactively apply the IBC. Contrary to what Premium Properties argued, Dahmen testified at the hearing that the building should have been classified "high hazard" in 2002, which would require the installation of an automatic sprinkler system.

¶6      Following testimony and submissions by the parties, the ALJ affirmed the DSPS's issue of the notice. The ALJ found that the DSPS was not aware in June 2002 of the fact that Premium Properties' building was going to be used for the retail sale and storage of fireworks. Further, the ALJ found that even prior to the adoption of the IBC, firework sale and storage was considered "high hazard" and required the installation of an automatic sprinkler system. *See* WIS. ADMIN. CODE § Comm 52.013(7) (Mar. 2000).[5]  As such, the ALJ concluded that the building's occupancy would have been correctly labeled "high hazard" in June 2002.

¶7      Additionally, the ALJ rejected Premium Properties' argument that the DSPS retroactively applied the IBC, reasoning that the DSPS was simply requiring Premium Properties to "submit building change of use plans to accurately describe the building's use[] under WIS. ADMIN. CODE § SPS 361.03(11)," and, therefore, the building code that "is in effect on the date that [the DSPS] approves the change of use plans will apply."

¶8      Premium Properties appealed the ALJ's decision, adopted by the DSPS, to the circuit court. The court affirmed the DSPS's decision. Premium Properties now appeals. Additional facts are provided below as necessary.

---

[5] All references to Chapter Comm 52 of the Wisconsin Administrative Code are to the March 2000 register unless otherwise noted.

**DISCUSSION**

¶9      In an action seeking judicial review of an agency decision under WIS. STAT. ch. 227 (2021-22),[6] we review the agency's decision, not the decision of the circuit court. ***Town of Ledgeview v. Livestock Facility Siting Rev. Bd.***, 2022 WI App 58, ¶8, 405 Wis. 2d 269, 983 N.W.2d 685. Because the DSPS adopted the ALJ's decision as its final decision, we review the ALJ's decision. *See* WIS. STAT. § 227.46(3)(a).

¶10      We must affirm an agency's decision unless we conclude that there is "a ground for setting aside, modifying, remanding or ordering agency action or ancillary relief under a specified provision of" WIS. STAT. § 227.57. Sec. 227.57(2). As relevant here, we will not substitute our "judgment for that of [an] agency as to the weight of the evidence on any disputed finding of fact," but we will "set aside agency action or remand the case to the agency if" we conclude "that the agency's action depends on any finding of fact that is not supported by substantial evidence in the record." Sec. 227.57(6). "'Substantial evidence does not mean a preponderance of the evidence.' Instead, the test is whether, after considering all the evidence of record, reasonable minds could arrive at the same conclusion." ***Hilton ex rel. Pages Homeowners' Ass'n v. DNR***, 2006 WI 84, ¶16, 293 Wis. 2d 1, 717 N.W.2d 166 (citation omitted).

¶11      Similarly, we will not substitute our judgment for that of an agency on issues of discretion. WIS. STAT. § 227.57(8). We will, however, "reverse or remand the case to the agency if" we conclude "that the agency's exercise of

---

[6] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

discretion is outside the range of discretion delegated to the agency by law; … or is otherwise in violation of a … statutory provision." *Id.* Furthermore, while we do not defer to an agency's interpretation of law, § 227.57(11), "due weight shall be accorded the experience, technical competence, and specialized knowledge of the agency involved, as well as discretionary authority conferred upon it," § 227.57(10).

## I. The ALJ's decision

¶12 Premium Properties first contends that several of the ALJ's findings are not supported by substantial evidence. Specifically, Premium Properties argues that, contrary to the ALJ's findings,[7] the DSPS knew in June 2002 that the building would be used for the retail sale and storage of fireworks; that fireworks were considered as "moderate hazard" in June 2002; and, therefore, that the current IBC section requiring an automatic sprinkler system cannot apply. Relatedly, Premium Properties contends that Dahmen's testimony at the hearing was "uninformed and unsupported."

¶13 The notice against Premium Properties was based on the building's occupancy in 2018 being different than that for which it was originally approved in June 2002. If the DSPS is correct that it did not know about the building's intended occupancy (namely, retail sale and storage of fireworks)—and that in June 2002 the DSPS considered fireworks high hazard—Premium Properties

---

[7] At times, Premium Properties uses language in its brief-in-chief that indicates it is analyzing the decision of the circuit court and not the ALJ's decision. For example, Premium Properties repeatedly uses the term "trial court" when referencing the decision we are reviewing. To the extent Premium Properties is arguing that the circuit court's decision was erroneous, we remind Premium Properties that we review the agency's decision, not that of the circuit court. *See* **Town of Ledgeview v. Livestock Facility Siting Rev. Bd.**, 2022 WI App 58, ¶8, 405 Wis. 2d 269, 983 N.W.2d 685.

would be required to comply with WIS. ADMIN. CODE § SPS 361.03(11), which states:

> [N]o change may be made in the use or occupancy of any building or structure, or any space within a building or structure, that would place the building, structure or space either in a different division of the same group of occupancies or in a different group of occupancies, unless the building, structure or space complies with the requirements of [WIS. ADMIN. CODE] chs. SPS 361 to 366 for the new division or group of occupancies, as these requirements exist on one of the following dates:
>
> (a) Pursuant to [WIS. ADMIN. CODE § SPS] 361.30, the date when plans for the change in occupancy or use are approved by the department or authorized representative.

As such, the DSPS concedes "that if Premium Properties were correct—that its fireworks-storage [and retail sales] use was indeed approved in June 2002 as 'moderate hazard'—then that approval would not be superseded by the current code." Put differently, the DSPS is not arguing that the IBC should be applied retroactively to Premium Properties.

¶14 We conclude that there is substantial evidence to support the ALJ's findings that automatic sprinklers would have been required in June 2002 if the building's occupancy had been properly disclosed, and that such occupancy was not properly disclosed. At the hearing, Dahmen testified regarding the DSPS's process for issuing conditional approval letters. Specifically, upon the submission of a building plan, the DSPS assigns a "reviewer[]," who reviews the plan "to verify compliance with the [building code in force at the time]." Dahmen explained that "[o]nce it's found that the appropriate information is then provided, [and] it demonstrates the minimum code compliance, only at that time will a [conditional approval letter] be drafted and issued." According to Dahmen, the

reviewer's "evaluation is against only that of the [building code]" and the building plan submitted to the DSPS.

¶15 Dahmen, who issued the conditional approval letter for the Premium Properties' building, testified that the building plan was submitted by Cornerstone Architecture. Dahmen further stated that, in accordance with his general practice, he did not personally visit the building site.[8] Consistent with the building plan, Dahmen stated that the conditional approval letter that he issued described the building as a "Ch. 54 New-Office/Warehouse," with the occupancy listed as "Business, Storage." He explained that there was nothing in the conditional approval letter "that would identify [the building] as being anything other than a general office or warehouse building" and that the entity names (Cornerstone Architecture and Premium Properties) did not offer any evidence of the sale or storage of fireworks.

¶16 Furthermore, Dahmen explained that the building was not in compliance with the building code in effect in June 2002. According to Dahmen, WIS. ADMIN. CODE § Comm 52.013(7), the building code in effect in June 2002 prior to the adoption of the IBC, required buildings that were characterized "high hazard" to have an automatic sprinkler system. Dahmen testified that the DSPS considered buildings "that were identified as having fireworks[] a high hazard."

---

[8] The ALJ's finding that the DSPS was unaware of the building's intended use is supported by the DSPS's prior practice. At the hearing, the DSPS submitted a conditional approval letter from the DSPS to a "fireworks dealership" in St. Croix County in 1999. The letter described the building as a high hazard "retail fireworks dealer," with the occupancy listed as "mercantile/commercial." Similarly, another conditional approval letter was submitted into evidence that showed that the DSPS approved a "Victory Fireworks" building as high hazard. Both of these conditional approval letters were expressly related to fireworks, unlike the conditional approval letter in this case, which did not indicate that the building would be used for fireworks sales and storage.

¶17 Dahmen's testimony concerning the DSPS's historic characterization of fireworks as high hazard is, in fact, supported by WIS. ADMIN. CODE § Comm 52.013(7), which stated that "an automatic sprinkler system shall be installed in all high hazard occupancies exceeding 3000 sq. ft. in floor area."[9] An appendix to the code in September 2000 stated, in part, that the term "High Hazard" covered "[b]uildings and structures *used for the storage …* of: highly combustible or explosive products or materials, which are likely to burn with extreme rapidity or which may produce poisonous fumes or explosions."[10] (Emphasis added.) In turn, fireworks are defined, as they were in 2002, as "anything manufactured, processed or packaged for exploding, emitting sparks or

---

[9] Although Premium Properties frames its challenge to the ALJ's decision as one of factual findings and substantial evidence, it appears at times that Premium Properties is arguing that the DSPS incorrectly interpreted WIS. ADMIN CODE § Comm 52.013(7) to include fireworks sales and storage. To the extent Premium Properties does raise such an argument, we determine it to be undeveloped and we will not consider it further. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

[10] Premium Properties spends a great deal of effort on appeal discussing various expert opinions and extrinsic sources that characterize fireworks as being less than high hazard, and it emphasizes the difference between manufacturing and storing fireworks. It also argues that the DSPS never conducted any "scientific testing." The DSPS contends that this evidence is not before us as it was not preserved by Premium Properties in its petition or at the hearing. Regardless of whether we can consider this evidence, we conclude it is irrelevant to the dispositive issue on appeal. The question is not whether other individuals or sources outside of the DSPS would have characterized the building's storage of fireworks "high hazard"; the question is whether the DSPS, in June 2002 and 2018, characterized fireworks sales and storage as "high hazard." Furthermore, it would be unreasonable to subject the DSPS to scientific testing for every single type of hazard. In addition, Premium Properties fails to explain how it has knowledge that the DSPS's high hazard characterizations are not based on scientific reasoning or testing.

Premium Properties also argues that the appendix to WIS. ADMIN CODE § Comm 52.013(7) "indicates that manufacture of fireworks is highly dangerous," not that the sale and storage of fireworks is highly dangerous. As emphasized above, that is an incorrect reading of the appendix, which clearly identifies as high hazard buildings "used for the storage" of "highly combustible or explosive products or materials." *See id.* The text Premium Properties highlights comes from the appendix column listing "Typical Examples." That column is not an exhaustive list.

combustion, which does not have another common use." WIS. STAT. § 167.10(1). WISCONSIN ADMIN. CODE § Comm 52.013(7) therefore supports Dahmen's testimony and the ALJ's finding that fireworks were considered high hazard in June 2002.

¶18 The ALJ found Dahmen "extremely credible" and his testimony "logical," and she found that Dahmen, as an employee of the DSPS, was not aware in June 2002 that the building would be used for storing and selling fireworks "and was not later informed of [that fact] by a building inspector." Further, the ALJ found that "Dahmen's credible testimony, and the record as a whole, established that, with a few exceptions over the years, it has been [the DSPS's] interpretation of the [building codes], under the law in effect in June 2002 and currently, that firework[s] sales and storage buildings are classified as high hazard." Both of these findings are supported by substantial evidence—that is, "reasonable minds could arrive at the same conclusion." *See Hilton ex rel. Pages Homeowners' Ass'n*, 293 Wis. 2d 1, ¶16.

¶19 Premium Properties attempts to rebut this evidence by arguing that DeGross testified that the building was inspected in 2002 after a sign was installed reading "Victory Fireworks," and, therefore, the DSPS knew of the building's intended occupancy. However, DeGross testified that "[l]ocal" inspectors were present after the signage was installed, not DSPS employees. Even so, the ALJ clearly did not give credence to DeGross's testimony given the above finding in favor of the DSPS, and we cannot reweigh the evidence to give his testimony more value on appeal. *See* WIS. STAT. § 227.57(6); *Hilton ex rel. Pages Homeowners' Ass'n*, 293 Wis. 2d 1, ¶25.

¶20   Next, while Premium Properties concedes that the "original application did not use the word fireworks sales or storage," it nonetheless contends that "there is no requirement to identify the contents of a mercantile operation."  Regardless of whether there is a requirement to identify the specific occupancy of a building beyond, for example, "Business, Storage," that matter does not change the fact that the DSPS was unaware of the high hazard occupancy in June 2002.  Consistent with the ALJ's findings, had the DSPS known that the building would be used for selling and storing fireworks, it would have required an automatic sprinkler system.

¶21   Premium Properties also contends that the DSPS's characterization of fireworks' hazard level "has been 'fluid' and inconsistent."  In support of this argument, Premium Properties cites an opinion from the National Fire Protection Association (NFPA) labeling fireworks retail sales as moderate hazard, as well as the DSPS's classification of other buildings with similar occupancy—fireworks retail sales—as moderate hazard.

¶22   For example, a letter received into evidence at the hearing revealed that the DSPS interpreted WIS. ADMIN. CODE § Comm 52.013(7) in 2004 to require a different Premium Properties' building (described as a "Warehouse"), conditionally approved for fireworks storage (a high hazard), to have an automatic sprinkler system.  According to the letter, the DSPS conditionally approved the building "with the installation of a" sprinkler system, but, as of 2004, Premium Properties had not installed such a system.

¶23   In 2005, the DSPS sent a letter to Premium Properties approving the building without an automatic sprinkler system.  According to the DSPS's statements in the letter, after reviewing evidence from a "design fire of 1.4G

consumer fireworks in a retail sales display rack setting," it characterized the fireworks storage for that specific building as moderate hazard. The DSPS explained "[t]hat the acceptance of this building[']s hazard classification as a moderate hazard is based on the applied conditions and the first test data provided." Conditions included that the building could only be used for the "storage of 1.4G consumer fireworks." The DSPS warned Premium Properties that the "approval [was] specific to this building and does not extend to any other structures."

¶24 At the hearing, evidence was also submitted showing that the DSPS, at one point prior to 1999, approved some of Premium Properties' fireworks retail buildings without automatic sprinkler systems. In 1995, for example, a building was permitted without a sprinkler system because an employee of the DSPS determined that Premium Properties' sale and storage of "Class C fireworks" constituted a moderate hazard based on information sought from the NFPA.

¶25 However, the DSPS submitted a letter into evidence from the agency to an architectural design group in 1999, stating that "[p]rior to the management staff discussion, 2 or 3 years ago, … we did approve some fireworks buildings without sprinkler protection. However, since the decision was made, we have enforced the requirement for sprinkler protection" and decided that "fireworks are high hazard." The DSPS's position from 1999 onward is consistent with other evidence submitted at the hearing. For example, a letter sent in 1999 from the DSPS to a fireworks retail store required an automatic sprinkler system because the DSPS considered fireworks high hazard.

¶26 The ALJ found that the DSPS indeed "granted a few exceptions to its high hazard classification for fireworks sales and storage buildings, thereby

12

allowing those owners, including Premium Properties, to not install automatic sprinkler systems in the buildings, provided they met certain specified conditions."[11]

¶27    The exceptions the DSPS granted to Premium Properties in the past are exactly that—exceptions.  Consistent with the conditional approval letters, the exceptions were building-specific and did not apply to other buildings. Furthermore, DeGross testified that the building-specific conditions imposed by the DSPS in 2005 for the above referenced warehouse were consistently applied to warehouses only, and not retail stores.  DeGross's testimony is consistent with a 1999 letter submitted into evidence.  The letter, sent from the DSPS to a fireworks warehouse, granted a variance to allow the building to store fireworks without an automatic sprinkler system if the building's occupants followed specific conditions, including the installation of "a state of the art products of ignition and combustion detection system."

---

[11]  The DSPS has the broad authority of:

> supervision of every employment, place of employment and public building in this state as is necessary adequately to enforce and administer all laws and all lawful orders requiring such [place] to be safe, and requiring the protection of the life, health, safety and welfare of every employee in such employment or place of employment and every frequenter of such place of employment, and the safety of the public or tenants in any such public building.

WIS. STAT. § 101.02(15)(a).  The DSPS "shall adopt reasonable and proper rules and regulations relative to the exercise of its powers and authorities."  Sec. 101.02(1)(b).  In enforcing its rules and orders, the DSPS makes discretionary decisions.  For example, the DSPS can grant variances if petitioned by a person affected by a rule or order.  *See* WIS. ADMIN. CODE § SPS 303.03 (Apr. 2018).

¶28     In context, the DSPS's exceptions and interpretation of fireworks as high hazard demonstrate a reasonable exercise of discretion.   As such, the exceptions, with the building-specific conditions, were granted within the discretionary power afforded to the DSPS, and Premium Properties offered no evidence at the hearing that the DSPS unfairly granted these exceptions to warehouse buildings only or did so blindly.   We therefore cannot overturn the ALJ's decision for this reason. *See* WIS. STAT. § 227.57(8).

¶29     In all, because Premium Properties' building was not approved for fireworks sales or storage in June 2002, the continued use of the building for that purpose requires Premium Properties to comply with the current code. *See* WIS. ADMIN. CODE § SPS 361.03(11)(a) (dictating that the building code that applies is based on "the date when plans for the change in occupancy or use are approved by the department or authorized representative").   In other words, the building's approved use has changed from "Business, Storage" to the sale and storage of fireworks, which the DSPS characterizes as high hazard.

## II.  DSPS authority and WIS. STAT. § 227.10(2m)

¶30     Premium Properties next contends that the DSPS exceeded its statutory and administrative authority when it required an automatic sprinkler system for the building and that the DSPS's policy of classifying retail fireworks stores in excess of 3,000 square feet as high hazard is unenforceable under WIS. STAT. § 227.10(2m). *See **Wisconsin Legis. v. Palm***, 2020 WI 42, ¶52, 391 Wis. 2d 497, 942 N.W.2d 900 (stating that § 227.10(2m) is essentially "a legislatively-imposed canon of construction that requires us to narrowly construe imprecise delegations of power to administrative agencies").

14

¶31    We do not have jurisdiction to consider these issues, however, because Premium Properties did not raise them in its petition for a hearing to challenge the DSPS's original order.  WISCONSIN STAT. ch. 101, governing the DSPS's regulation of "industry, buildings and safety," dictates that "[a]ll orders of the [DSPS] in conformity with law shall be in force … until they are found otherwise upon judicial review thereof pursuant to [WIS. STAT.] ch. 227."  WIS. STAT. § 101.02(6)(a).  An "order" "means any decision, rule, regulation, direction, requirement or standard of the [DSPS], or any other determination arrived at or decision made by the [DSPS]."  WIS. STAT. § 101.01(9).

¶32    In turn, "[a]ny employer or other person interested either because of ownership in or occupation of any property affected by any such order, or otherwise, may petition for a hearing on the reasonableness of any order of the [DSPS] in the manner provided in this subchapter."  WIS. STAT. § 101.02(6)(e).  The petition must articulate

> every reason why such order is unreasonable, and every issue to be considered by the [DSPS] on the hearing.  The petitioner shall be deemed to have finally waived all objections to any irregularities and illegalities in the order upon which a hearing is sought other than those set forth in the petition.

Sec. 101.02(6)(f).

¶33    Premium Properties contends that it did raise arguments regarding the DSPS's authority and WIS. STAT. § 227.10(2m) in its petition because the petition "challenged the lawfulness and reasonableness of the [DSPS's] order, addressed property usage and hazard classification, and incorporate[d] numerous

15

attached documents regarding the issues and relevant history."[12] It also argues that the issues were preserved for appeal because they "were all included in [its] prehearing memorandum."

¶34 We disagree that the petition sufficiently raised "every reason why the [DSPS's] order [was] unreasonable" or "every issue" that the DSPS was to consider at the hearing. The petition stated that

> [t]here has been no change in occupancy nor use, and no change nor alteration in the business operation or building during the life of the facility. Occupancy has been determined by the [DSPS] to be moderate hazard. The structure was built prior to the 2002 Enrolled Building Code. The [DSPS] has not applied such Code retroactively on any other similarly situated structures in [Wisconsin].

The petition included a number of attachments, none of which related to the DSPS's authority or WIS. STAT. § 227.10(2m).

¶35 We also do not find Premium Properties' argument regarding its "prehearing memorandum" persuasive. The statute is clear that "every reason" not stated in the petition as to why the DSPS's order "is unreasonable," and "every issue" not stated in the petition as to what the DSPS was to consider at the hearing, is "finally waived" for purposes of WIS. STAT. ch. 227. *See* WIS. STAT.

---

[12] Premium Properties also argues that we should address the DSPS's authority and WIS. STAT. § 227.10(2m) because the DSPS "waived" "any valid objection" to Premium Properties challenging the agency's decision on these grounds. However, a respondent on appeal may raise any argument that would support a lower court's action, regardless of whether that argument was raised in the lower court. *State v. Holt*, 128 Wis. 2d 110, 124-25, 382 N.W.2d 679 (Ct. App. 1985), *superseded by statute on other grounds*, WIS. STAT. § 940.225(7). "Furthermore, it is well-established law in Wisconsin that an appellate court may sustain a lower court's ruling 'on a theory or on reasoning not presented to the lower court.'" *Blum v. 1st Auto & Cas. Ins. Co.*, 2010 WI 78, ¶27 n.4, 326 Wis. 2d 729, 786 N.W.2d 78 (citation omitted). We see no reason not to apply these holdings to our review of the DSPS's action at issue here.

§ 101.02(6)(f). The ALJ also reached this conclusion, stating that she would not consider Premium Properties' argument regarding the DSPS's authority because it was not raised in the petition.[13] We therefore conclude that Premium Properties "finally waived" such objections and issues for purposes of our ch. 227 review by not including them in its petition for a hearing.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[13] Premium Properties' prehearing memorandum simply included a one-sentence argument regarding WIS. STAT. § 227.10(2m), however, the ALJ did not expressly address Premium Properties' § 227.10(2m) argument in her decision. Regardless, this argument was not raised in Premium Properties' petition, and the ALJ was therefore correct to not address its merits.